No. 26-508

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF CALIFORNIA,

*Petitioner*,

V.

PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, ET AL.,

*Respondents*.

## PETITIONER'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORD, AND FOR JUDICIAL NOTICE

ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
DEBORAH SMITH
  *Senior Assistant Attorneys General*
MYUNG J. PARK
VANESSA C. MORRISON
  *Supervising Deputy Attorneys General*

MATTHEW BULLOCK
MICHAEL S. DORSI
REBECCA HUNTER
RAFAEL J. HURTADO
MITCHELL RISHE
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3802
Fax: (415) 703-1107
Michael.Dorsi@doj.ca.gov
Mitchell.Rishe@doj.ca.gov
  *Attorneys for Petitioner*

March 23, 2026

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................ 1

Factual Background ................................................................................... 4

Standard of Review .................................................................................... 7

Argument..................................................................................................... 8

    I.    The Court Should Order PHMSA to Complete the Record or, Alternatively, Take Judicial Notice of Documents Directly or Indirectly Considered by PHMSA .......................... 8

        A.    The Court Should Order PHMSA to Complete the Record with Material Necessary to a Fair Consideration of the Agency's Decisions........................ 8

        B.    Should the Court Decline to Order PHMSA to Complete the Record with the Foregoing Documents, It Should Nevertheless Take Judicial Notice of the Documents ............................................. 16

    II.    The Court Should Take Judicial Notice of Documents .......... 17

Conclusion ................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*
143 F. Supp. 2d 7 (D.D.C. 2001) .................................................................. 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*
401 U.S. 402 (1971) ................................................................................. 7, 8

*Cty. of San Miguel v. Kempthorne*
587 F. Supp. 2d 64 (D.D.C. 2008) ............................................................... 9

*Daniels-Hall v. Nat'l Educ. Ass'n*
629 F.3d 992 (9th Cir. 2010) ................................................... 16, 17, 18, 19

*Gill v. U.S. Dep't of Justice*
No. 14-3120, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015) ..................... 10

*Marsh v. Or. Nat. Res. Council*
(1989) 490 U.S. 360 .................................................................................. 15

*Motor Vehicle Mfrs Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*
463 U.S. 29 ................................................................................................ 15

*Native Ecosystems Council v. U.S. Forest Serv.*
418 F.3d 953 (9th Cir. 2005) .................................................................... 15

*Oceana v. Pritzker*
No. 16-cv-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal.
June 21, 2017) ........................................................................................ 8, 9

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*
Nos. C05-3508 & C05-4038, 2006 WL 708914 (N.D. Cal.
Mar. 16, 2006) ....................................................................................... 9, 10

*Portland Audubon Soc'y v. Endangered Species Comm.*
984 F.2d 1534 (9th Cir. 1993) .................................................................... 8

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*
No. 17-05211-WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17,
2017) .................................................................................................11

*Thompson v. U.S. Dep't of Labor*
885 F.2d 551 (9th Cir. 1989) .............................................................7, 9

*United States ex. Rel. Robinson Rancheria Citizens Council v.*
*Borneo, Inc.*
971 F.2d 244 (9th Cir. 1992) .............................................................17, 18

**STATUTES**

5 U.S.C.
§ 706.............................................................................................8, 15
§ 706(2)............................................................................................7
§ 706(2)(A) .......................................................................................15

49 U.S.C. § 60101(a)(18)............................................................................7, 10

**COURT RULES**

Fed. R. Evid.
201................................................................................................16
201(b)(2) .........................................................................................17

**OTHER AUTHORITIES**

49 C.F.R.
§ 195............................................................................................3, 12, 14, 17
§ 195.2...........................................................................................10
§ 195.452(h)(4)(iii)(H)........................................................................1, 7

**INTRODUCTION**

In this case, Petitioner the State of California challenges three orders that were issued by the Pipeline and Hazardous Materials Safety Administration ("PHMSA") at the request of intervenor Sable Offshore Corporation ("Sable"). The orders were issued in quick succession on December 17, 22, and 23, 2025, with no public process, and no opportunity for Petitioner or others to comment or submit evidence. The December 17 order (the "Federalization Order") purported to redefine two intrastate pipelines within California, CA-324 and CA-325 ("Lines CA-324/325"), as interstate, and to assume federal regulatory control displacing the prior state regulator. The December 22 order (the "Restart Approval") approved of Sable's plan to restart operations. And the December 23 order issued to Sable an Emergency Special Permit, allowing it to operate Lines CA-324/325 without being subject to federal regulations related to corrosion control, 49 C.F.R § 195.452(h)(4)(iii)(H), which Sable then did in March 2026.

Because PHMSA rushed to complete these proceedings, the record it produced is incomplete. Petitioner thus seeks to complete the record with four documents that likely were before PHMSA at the time of its December 2025 decisions but were not included. In the alternative, Petitioner requests that the Court take judicial notice of three of these documents.

1

The first two documents (found at 1-CalPSE-52-57) are letters between Sable and the state regulator, the Office of the State Fire Marshal ("OSFM"), regarding the state regulator's determination that Sable's restart plans were insufficient. The state regulator's rejection of Sable's plans was the reason Sable requested that PHMSA take jurisdiction, and PHMSA then approved the same restart plans that OSFM denied. It is implausible that PHMSA was not aware of these communications, as they set in motion the process whereby Sable sought PHMSA's intervention and ultimately its assumption of jurisdiction.

The third document (found at 1-CalPSE-82-152) is Sable's Spill Prevention, Control, and Countermeasure ("SPCC") Plan for its oil and gas processing, treatment and storage facilities at Las Flores Canyon (the "LFC Facilities"). In its Federalization Order, PHMSA determined that the LFC Facilities—which sit between Lines CA-324/325 and other pipelines that run offshore into federal waters—were all part of a single "pipeline facility." Yet the record PHMSA has produced for this case contains no evidence of PHMSA ever considering what activities the LCF Facilities do. As the Federalization Order acknowledges that PHMSA "reviewed Sable's written procedures and records," the SPCC Plan should have been before the agency as part of these proceedings, and contains information needed to evaluate whether the LCF Facilities—which *treat and store* oil rather

2

than transport it—is in fact a "pipeline" facility under the relevant statutes and regulations. *See* California Opening Br. Section II.D.

Finally, the fourth document (found at 1-CalPSE-177-82) is a demonstrative map of "Appendix A" to PHMSA's regulations, 49 C.F.R. Part 195. This map illustrates the distinction between interstate and intrastate pipelines and correlate to the examples set forth in "Appendix A." PHMSA cites to one of these "examples" for its Federalization Order. As the map is not available in the electronic version of the C.F.R. (ecfr.gov), the map should have been included in the record.

The parties have met and conferred, and PHMSA does not object to adding to the record the first and second documents (letters), and to supplementing the record with the fourth document (Appendix A map). PHMSA opposes adding to the record the third document (Sable's SPCC Plan).

Petitioner also requests that the Court order PHMSA to produce any additional documents that it directly *or indirectly* considered in issuing the challenged orders. As set forth herein, PHMSA has produced no internal communications; no communications with other federal, state, or local agencies; and no reports or memoranda of inspections of Sable's facilities that the record— deficient as it is—reveals were conducted. PHMSA should be ordered to complete the record with these documents.

Petitioner also requests that the Court take judicial notice of five additional documents that are either (i) proceedings in other courts, or (ii) documents made publicly available by a government entity. These categories of documents are proper for judicial notice under rule 201 of the Federal Rules of Evidence and case law.

## FACTUAL BACKGROUND

This case concerns whether PHMSA's assumption of regulatory control over two intrastate pipelines in California was lawful and whether, in reliance on that assumption of regulatory control, it had authority to both approve Sable's plan for restarting oil transportation through the pipeline, and to issue Sable an emergency special permit allowing it to quickly, and without any opportunity for public comment, restart operation of Lines CA-324/325.

In 2015, an oil pipeline owned by Plains All American Pipeline ("Plains")— then known as Line 901 and now known as Line CA-324—ruptured due to external corrosion of the pipeline. The spill, which occurred near Refugio State Beach in Santa Barbara, California, released over 120,000 gallons of crude oil into the environment and adversely impacted natural resources under the trusteeship of the United States and the State of California, including marine mammals and fish, along with their prey base, including kelp and eelgrass, and

4

their habitats. 3-CalER-374, 4-CalER-658, 4-CalER-733-35, 5-CalER-781-882, 6-CalER-899, 001102.

Afterwards, state and federal agencies, including PHMSA, engaged with Plains regarding harm from the spill, projects to remedy that harm, and civil penalties. Those efforts culminated in 2020 with an agreed Consent Decree, filed in and approved by the Central District of California. 5-CalER-781-882. The Consent Decree resolved claims by agencies including PHMSA and OSFM. *Id*. The Consent Decree offered a possibility of restarting Lines CA-324/325 without replacing the pipelines, while acknowledging the defect in their design. 5-CalER-876-882. To do so lawfully and safely, the pipelines' owner would be required to obtain permits, known as State Waivers, from OSFM that provided conditions in lieu of modern safety regulations for cathodic protection, but require other safety measures in their place. 5-CalER-860. The Consent Decree confirmed that OSFM has "sole regulatory oversight" over Lines CA-324/325. 5-CalER-876.

In February 2024, Sable acquired the Santa Ynez Unit—federal offshore oil leases in the outer continental shelf, which include three oil platforms and undersea pipelines that deliver oil and gas to the shore—along with the LFC Facilities and Lines CA-324/325. Since that time, Sable has engaged in efforts to restart oil production which has been the subject of intense public scrutiny, controversy, and

litigation. In acquiring Lines CA-324-325, Sable agreed to be bound by the terms of the Consent Decree. 3-CalER-558-65.

In December 2024, OSFM issued Sable two State Waivers approving operation of Lines CA-324/325 without meeting certain otherwise applicable regulations. 3-CalER-456-85. In February 2025, PHMSA reviewed the State Waivers and had no objection. 3-CalER-348-51. But in October 2025, OSFM declined to approve Sable's restart plan because the plan did not comply with the conditions set forth in the State Waivers. 3-PSE-56-57. Rather than come into compliance, Sable on November 26, 2025, petitioned PHMSA to assert regulatory jurisdiction over the pipelines. 2-CalER-206-209.

PHMSA complied. Just three weeks later, on December 17, 2025, PHMSA issued the Federalization Order, purporting to assume exclusive federal jurisdiction over Lines CA-324/325. 1-CalER-24-26. PHMSA did so on the grounds that it had conducted an evaluation and determined that the "Las Flores Pipeline" transports crude oil from the Outer Continental Shelf ("OCS") to Pentland, California and is therefore an interstate pipeline. In other words, according to PHMSA, Lines CA-324/325 are part of a larger pipeline facility that "transports crude oil from the OCS to an onshore processing facility at Las Flores Canyon and continues the transportation of crude oil from Las Flores Canyon to Pentland, California." 1-CalER-25. Before December 2025, no agency or court had ever concluded that

6

these three pipeline systems—the offshore oil pipelines, the LFC Facilities, and Lines CA-324/325—were part of the same "pipeline facility." 49 U.S.C. § 60101(a)(18).

PHMSA then approved Sable's restart plan on December 22, 2025. 1-CalER-22. The next day, December 23, 2025, PMHSA issued an Emergency Special Permit, waiving compliance with the requirements set forth in PHMSA's regulations, 49 C.F.R § 195.452(h)(4)(iii)(H). 1-CalER-1.

The petition in this case challenges all three agency actions under the Pipeline Safety Act and Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

## STANDARD OF REVIEW

A motion to compel completion of the record stems from the fact that, in evaluating the validity of an agency decision under the Administrative Procedure Act, the Court must consider "the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). "The whole administrative record, however, 'is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record.'" *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted). Rather, "[t]he 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency

7

decision-makers and includes evidence contrary to the agency's position." *Id*. (citation omitted). "An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'" *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted).

Although agencies are entitled to "a strong presumption" that their administrative records are complete, to rebut that presumption, a movant need only "identify the allegedly omitted materials with sufficient specificity" and "reasonable, non-speculative grounds for the belief that documents were considered by the agency and not included in the record." *Oceana v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (citation modified). A movant can also rebut the presumption by showing "the agency applied the wrong standard for compiling the record." *Id*. A showing of "bad faith or improper motive" is not needed. *Id*.

## ARGUMENT

### I.   THE COURT SHOULD ORDER PHMSA TO COMPLETE THE RECORD OR, ALTERNATIVELY, TAKE JUDICIAL NOTICE OF DOCUMENTS DIRECTLY OR INDIRECTLY CONSIDERED BY PHMSA

#### A.   The Court Should Order PHMSA to Complete the Record with Material Necessary to a Fair Consideration of the Agency's Decisions

Section 706 of the APA states that courts "shall review the whole record" of agency decisionmaking. 5 U.S.C. § 706. Judicial review of agency action must therefore be "based on the full administrative record that was before the [agency]

8

at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record," *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989), and the Court need not take the government's production at face value. Rather, "[t]he 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id*. (internal quotation marks omitted, emphasis in original); *see also Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 71 (D.D.C. 2008) (administrative record must include "all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision" (internal quotation marks omitted)); *see also Oceana v. Pritzker*, 2017 WL 2670733, at *2 ("An agency may not exclude information it considered on the grounds that it did not rely on that information."). A "document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, Nos. C05-3508 & C05-4038, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (quoting *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996)). Thus, a complete administrative record must include "the work and recommendations of subordinates." *Kempthorne*, 587

9

F. Supp. 2d at 71 (internal quotation marks omitted); *see also Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) ("[I]f the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well."). Although there is a "presumption that the administrative record submitted by Defendants is complete," Plaintiffs can rebut that presumption "with clear evidence to the contrary." *Lockyer*, 2006 WL 708914, at *2. The inadequacy of an administrative record does not require a showing of "bad faith or improper motive." *Id*. Rather, a plaintiff must show only "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Gill v. U.S. Dep't of Justice*, No. 14-3120, 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015) (internal quotation marks omitted).

The administrative record in this case should contain all material that was directly *or indirectly* considered as part of the process of determining whether Lines CA-324/325 are interstate pipelines, including whether the LFC Facilities can reasonably be considered a "pipeline facility." 49 U.S.C. §§ 60101(a)(18); 49 C.F.R. § 195.2. The administrative record also should contain all material directly *or indirectly* considered as part of PHMSA's December 22 Restart Approval and December 23 Emergency Special Permit.

Here, the record is patently deficient. The Federalization Order makes references to PHMSA's "review" of the Pipelines, including an "on-site inspection," review of Sable's "written procedures and records," and "field observations" of Sable's various assets. 1-CalER-24. But the record lacks any details regarding PHMSA's purported "review" of Lines CA-324/325, the results of any "on-site inspection" or "field observations," or the "written procedures and records" that PHMSA purportedly reviewed. Conspicuously, the record contains no internal agency communications or communications between the agency and Sable about these "reviews" and "inspections," and there are no inspection notes or reports. The record also lacks any documents or communications with other federal, state or local agencies about the federalization or restart of Lines CA-324/325. (Given that PHMSA was purportedly acting pursuant to a Presidential Executive Order, *see* 1-CalER-20, 3-CalER-352-56, the lack of any communication with other federal agencies is patently suspect). Moreover, included in the record is an Inspection Output Report, 2-CalER-27-29. What is missing from the record are the *inputs*, or questions that were used to generate the Output Report.

These types of documents should be included as part of the record. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-05211-WHA, 2017 WL 4642324, at *3–5 (N.D. Cal. Oct. 17, 2017) (ordering the defendants to

complete the record with communications with the White House and other agencies, including emails and meeting notes, because of evidence that the President and high-level officials at other agencies were involved in the agency action at issue), aff'd by *Trump v. United States Dis. of N. Cal.*, 875 F.3d 1200 (9th Cir. 2017), vacated on other grounds by *In re U.S.*, 583 U.S. 29 (2017).

Petitioner has identified specific documents that the agency should have either directly *or indirectly* considered in issuing the challenged orders, but were not included in the record:

| Document | Date | CalPSE No. | PHMSA Position |
|---|---|---|---|
| Letter from OSFM to Sable | 10/22/2025 | 1-CalPSE-56-57 | Agrees to add |
| Letter from Sable to OSFM | 10/23/2025 | 1-CalPSE-52-55 | Agrees to add |
| Sable's Spill Prevention, Control, and Countermeasure Plan | 3/2025 | 1-CalPSE-82-152 | Opposes addition |
| Liquid Pipeline Interstate/Intrastate Delineation Maps | 10/18/2001 | 1-CalPSE-177-82 | Agrees to add |

1.  1-CalPSE-56-57 consists of an October 22, 2025, letter from OSFM to Sable, denying Sable's restart plan for Lines CA-324/325. As set forth in the letter, certain conditions for restart directly related to mitigating the risk of corrosion "has not yet been met and that Sable must complete prior to any potential restart." This October 2025 document is dated approximately two months before PHMSA purported to take over regulatory control of Lines CA-324/325.

The letter confirmed that Sable had submitted a restart plan to OSFM for review and approval and that OSFM's review of Sable's restart plan was ongoing. It also identified a requirement of the State Waivers that Sable had not yet satisfied and that OSFM required prior to any potential restart. It was this letter denying Sable's restart plan that prompted Sable to petition PHMSA to unlawfully take over regulatory jurisdiction from OSFM. Since OSFM notified PHMSA in December 2024 that it granted State Waivers to Sable, 3-CalER-452-55, and PHMSA did not object, 3-CalER-348-51, but then in November 2025 received a request from Sable to excuse it from the State Waivers' conditions and assume federal jurisdiction, 2-CalER-206-09, it is almost certain that PHMSA was aware that OSFM had rejected Sable's restart plan as being out of compliance with the State Waivers when it assumed jurisdiction of Lines CA-324/325 and approved Sable's restart plan.

2.    1-CalPSE-52-55 consists of an October 23, 2025, letter from Sable to OSFM, dated the day after OSFM denied Sable's restart plan, responding to the denial. In this letter Sable informs OSFM that its conclusions "are in error, ignore the remainder of the Waivers and are inconsistent with numerous discussions between OSFM and Sable." As this document directly responds to OSFM's restart denial, it is reasonable to conclude that PHMSA knew, either directly or indirectly, of OSFM's letter when it approved Sable's restart plan.

13

3. 1-CalPSE-82-152 consists of Sable's SPCC Plan for the LFC Facilities. Concluding that an onshore processing, treatment and storage facility at Las Flores Canyon was a "pipeline facility" under the federal Pipeline Safety Act and PHMSA's regulations was necessary for PHMSA to reach its conclusion that Lines CA-324/325 were interstate pipelines, and subject to federal regulation. As PHMSA has determined that the LFC Facilities are part of an interstate pipeline facility, presumably it inspected the LFC Facilities to make that determination and directly or indirectly reviewed available documentation regarding the facility, including the SPCC Plan. If PHMSA did indeed "review Sable's written procedures and records . . . of the Las Flores Facility," AR-000993, then it should have reviewed this document.

4. Finally, 1-CalPSE-177-82 consists of PHMSA-produced Liquid Pipeline Interstate/Intrastate Delineation maps. The maps in this document provide illustrations of various examples of when PHMSA will determine a pipeline interstate vs. intrastate, corresponding to the examples set forth in Appendix A to PHMSA's regulations, 49 C.F.R. Part 195. PHMSA's Federalization Order relied on "Example 7" to Appendix A in determining Lines CA-324/325 are interstate. *See* AR 000993-995. Example 7 describes, as an illustration of an interstate pipeline, "Pipeline Company P operates a pipeline that originates on the Outer Continental Shelf. P does not file any tariff for that line with FERC. [PHMSA] will

14

consider the pipeline to be an interstate pipeline facility.'" 1-CalER-25 at footnote 7. The map, as an illustration of Appendix A, should be included in the administrative record.

Completing the record with the foregoing documents are necessary in order for this Court to carry out its role under the APA to review and have access to "the whole record." 5 U.S.C. § 706. Ensuring this Court has access to the "whole record" is vital to ensuring effective judicial review.

In determining whether PHMSA's actions are arbitrary and capricious, this court must evaluate the evidence and analysis that was before PHMSA, the considerations PHMSA weighed, and PHMSA's conclusions and reasoning. *Motor Vehicle Mfrs Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29 at 43. Under the APA, a court "shall" set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). "This inquiry must be searching and careful, but the ultimate standard of review is a narrow one." *Marsh v. Or. Nat. Res. Council*, (1989) 490 U.S. 360, 378 (quotations omitted). "To have not acted in an arbitrary and capricious manner, the agency must present a rational connection between the facts found and the conclusions made." *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005). A court cannot assess whether a decision "runs

15

counter to the evidence before the agency" *Motor Vehicle Mfrs*, 463 U.S. at 43, without having *all* the evidence before the agency.

### B. Should the Court Decline to Order PHMSA to Complete the Record with the Foregoing Documents, It Should Nevertheless Take Judicial Notice of the Documents

With the exception of the SPCC Plan, the Court may take judicial notice of each of the documents that Petitioner requests be made part of the record. Federal Rules of Evidence, rule 201. In the alternative, Petitioner requests that the Court take judicial notice of the documents as follows:[1]

1. Letter from OSFM to Sable (Oct. 22, 2025). This document was prepared by OSFM, a government agency, and therefore is judicially noticeable under *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998–99 (9th Cir. 2010) (courts may take judicial notice of documents that were made "publicly available by government entities").

2. Letter from Sable to OSFM (Oct. 23, 2025). Because this document is addressed to OSFM, it is on file and in the possession of a government agency. Thus, this document is judicially noticeable under *Daniels-Hall,* 629 F.3d at 998–99.

---

[1] The legal authority for judicial notice is discussed in more detail in Section II, *supra*.

16

3.   Liquid Pipeline Interstate/Intrastate Delineation Maps (Oct. 18, 2001) (Appendix A to 49 C.F.R. Part 195). This document was prepared by PHMSA and is a publicly available document on its website (*available at* https://www.phmsa.dot.gov/pipeline/annotated-regulations/liquid-pipeline-interstateintrastate-delineation). Thus, this document is judicially noticeable under *Daniels-Hall*, 629 F.3d at 998–99.

## II.   THE COURT SHOULD TAKE JUDICIAL NOTICE OF DOCUMENTS

Petitioner also requests that the Court take judicial notice of documents under rule 201 of the Federal Rules of Evidence. Courts may take judicial notice of a fact if it "is not subject to reasonable dispute because . . . it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Courts may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted). Courts also may take judicial notice of documents that were made "publicly available by government entities," provided no party disputes the authenticity of accuracy of the information. *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998–99 (9th Cir. 2010).

17

The documents for which Petitioner requests this Court take judicial notice are all either (i) judicial documents, or (ii) documents made publicly available by government entities, as follows:

1.  Complaint, *Sable v. California*, Case No. 26WM000036 (Sacramento County Sup. Court) (1-CalPSE-1-48). This document is from a court proceeding and is a judicially noticeable document under *Borneo*, 971 F.2d at 248.

2.  Complaint, *Pacific Pipeline Co. v. California*, Case No. BCV-25-103508 (Kern County Sup. Court) (1-CalPSE-58-81). This document is from a court proceeding and is a judicially noticeable document under *Borneo*, 971 F.2d at 248.

3.  Update on the Status of the Existing Offshore Oil and Gas Production and Pipeline Leases Managed by the Commission, State Lands Commission (Apr. 26, 2022) (1-CalPSE-153-76). This document was prepared by the California State Lands Commission, a government agency, and is a publicly available document on its website (*available at*

https://slcprdwordpressstorage.blob.core.windows.net/wordpressdata/2022/05/04-23-22_61-Presentation.pdf). Thus, this document is judicially noticeable under *Daniels-Hall,* 629 F.3d at 998–99.

4.  PHMSA Limited Enforcement Discretion Policy (Jan. 12, 2026) (1-CalPSE-49-51). This document was prepared by PHMSA, a government agency,

and is a publicly available document on its website (*available at*

https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/2026-01/Notice%20of%20Limited%20Enforcement%20Discretion%20and%20Statement%20of%20Policy%20for%20Issuing%20Special%20Permits%20in%20Response%20to%20National%20Energy%20Emergency.pdf). Thus, this document is

judicially noticeable under *Daniels-Hall,* 629 F.3d at 998–99.

## CONCLUSION

Petitioner respectfully requests that the Court order Respondent PHMSA to

complete the administrative record, and/or take judicial notice of the documents

described above.

Dated:  March 23, 2026                    Respectfully submitted,

       *s/ Mitchell Rishe*
MITCHELL RISHE
  *Deputy Attorney General*
ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
DEBORAH SMITH
  *Senior Assistant Attorneys General*
MYUNG PARK
VANESSA C. MORRISON
  *Supervising Deputy Attorneys General*
MATTHEW BULLOCK
MICHAEL S. DORSI
REBECCA HUNTER
RAFAEL J. HURTADO
MITCHELL RISHE
  *Deputy Attorneys General*

19

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** __26-508_____

I am the attorney or self-represented party.

**This brief contains <u>3935 words,</u>** including words manually counted in any

visual images, and excluding the items exempted by FRAP 32(f). The brief's type

size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____*/s Mitchell Rishe*_____ **Date** _____March 23, 2026_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 15. Certificate of Service for Electronic Filing**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 26-508

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

PETITIONER'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORD, AND FOR JUDICIAL NOTICE

**Signature** _____ *s/ Mitchell Rishe* _____ **Date** ___ March 23, 2026 ___