Nos. 25-8059, 26-508

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents*,

and

SABLE OFFSHORE CORP., et al.,
*Intervenors*.

On Petition for Review of Decisions Issued by the
Pipeline & Hazardous Materials Safety Administration

**PETITIONERS' MOTION TO COMPLETE AND SUPPLEMENT
THE ADMINISTRATIVE RECORD AND FOR JUDICIAL NOTICE**

Linda Krop
Jeremy M. Frankel
Margaret M. Hall

Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
Tel: (805) 963-1622
lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
mhall@environmentaldefensecenter.org

*Attorneys for Petitioners Environmental
Defense Center, Get Oil Out!, Santa
Barbara County Action Network, Sierra
Club, and Santa Barbara Channelkeeper*

Julie Teel Simmonds
David Pettit
Talia Nimmer

Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
Tel: (510) 844-7100
jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

*Attorneys for Petitioners
Center for Biological Diversity
and Wishtoyo Foundation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 3

    I.    The Court Should Grant Petitioners' Request to Complete and Supplement the Record to Ensure Meaningful Review of PHMSA's Actions. .............................................................. 3

        A.    Standard of Review ................................................................ 3

        B.    Completion of the Record Is Appropriate Because PHMSA Either Directly or Indirectly Considered Documents Not in the Lodged Record ....................................... 6

        C.    The Court Should Allow Supplementation of the Record With Extra-Record Evidence That Fits Within Well-Established Exceptions ...................................... 9

    II.    The Court Should Grant Petitioners' Request for Judicial Notice of Administrative Agency and Judicial Documents ................ 17

        A.    Standard of Review ............................................................. 17

        B.    The Documents Are Judicially Noticeable .......................... 17

CONCLUSION ............................................................................................... 18

i

# TABLE OF AUTHORITIES

**Cases**

*Asarco, Inc. v. EPA,*
  616 F.2d 1153 (9th Cir. 1980).................................................................................6

*Blue Mts. Biodiversity Proj. v. Jeffries,*
  99 F.4th 438 (9th Cir. 2024).................................................................................3

*California v. Ross,*
  358 F. Supp. 3d 965 (N.D. Cal. 2019) ...................................................................4

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
  401 U.S. 402 (1971) .............................................................................................4

*Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency,*
  812 F. Supp. 2d 1089 (E.D. Cal. 2011)................................................................18

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010).................................................................................18

*Earth Island v. U.S. Forest Serv.,*
  442 F.3d 1147 (9th Cir. 2006)...............................................................................16

*Lands Council v. Forester of Region One of the U.S. Forest Serv.,*
  395 F.3d 1019 (9th Cir. 2005)......................................................................... 5, 10

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001).................................................................................17

*Nat'l Audubon Soc'y v. U.S. Forest Serv.,*
  46 F.3d 1437 (9th Cir 1993).................................................................................16

*Oceana v. Pritzker,*
  No. 16-cv-06784-LHK, 2017 WL 2670733 (N.D. Cal. June 21, 2017).............5, 9

*Portland Audubon Soc'y v. Endangered Species Comm.,*
  984 F.2d 1534 (9th Cir. 1993)..............................................................................4, 5

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006).................................................................18

*Thompson v. U.S. Dep't of Labor*,
  885 F.2d 551 (9th Cir. 1989)................................................ 4, 6, 9, 16

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
  971 F.2d 244 (9th Cir. 1992)..................................................................18

**Federal Statutes**

5 U.S.C. § 706..........................................................................................3

42 U.S.C. §§ 4321–4370m-12 ..................................................................2

49 U.S.C. § 60118(c)(2)(A)(ii) ...............................................................10

49 U.S.C. §§ 60101–60143.......................................................................2

**Rules**

Fed. R. Evid. 201(b)...............................................................................17

Petitioners Environmental Defense Center, Center for Biological Diversity, Sierra Club, Santa Barbara County Action Network, Get Oil Out!, Santa Barbara Channelkeeper, and Wishtoyo Foundation (collectively, Petitioners) jointly submit this Motion to Complete and Supplement the Administrative Record and for Judicial Notice to ensure effective judicial review of their Petition.[1]

Petitioners' Motion includes twenty-eight documents, authenticated by the concurrently filed Declaration of Julie Teel Simmonds, as well as three expert declarations. The twenty-eight documents are provided in two consecutively paginated volumes titled "Petitioners' Supplemental Evidence," filed concurrently, and are cited in Petitioners' Opening Brief as "PSE" (e.g., 1-PSE-2, 2-PSE-243). The remaining three documents (the Declarations of Clayton Bodell, Paasha Mahdavi, and Lawrence Hunt), are also submitted concurrently with this Motion.

Pursuant to Ninth Circuit Rule 27-1(2), counsel for Petitioners contacted counsel for Respondents and Intervenors to obtain their positions on this Motion. Respondents and Intervenors stated that they intend to oppose.

## INTRODUCTION

In this case, Petitioners challenge PHMSA's orders approving a Restart Plan and Emergency Special Permit (ESP) (together, the "Approvals") for defunct oil

---

[1] As this matter is evolving, Petitioners reserve the right to request completion and/or supplementation with additional documents as they become available.

pipelines CA-324 and CA-325 (the "Onshore Pipelines").[2] The Onshore Pipelines were shut down following the 2015 Refugio Oil Spill, when they caused one of the worst oil spills in California history. As explained in Petitioners' Opening Brief, in hastily issuing the Approvals in late December, PHMSA exceeded its jurisdiction and authority and violated the Hazardous Liquid Pipeline Safety Act (PSA), 49 U.S.C. §§ 60101–60143 and National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370m-12.

To ensure meaningful judicial review of their claims and PHMSA's extraordinary actions, Petitioners first request that the exceedingly limited Administrative Record (the "Record") that PHMSA lodged be completed with documents the agency either directly or indirectly considered in issuing its Approvals. On January 16, 2026, counsel for Petitioners reached out to counsel for PHMSA identifying the majority of these documents as missing from the Record and requesting that the agency add them. Teel Simmonds Decl. Ex. A. However, PHMSA denied Petitioners' request on January 22, 2026. *Id*. at Ex. B.

Second, Petitioners request that the Record be supplemented to include extra-record evidence that demonstrates PHMSA failed to consider all relevant and critical factors when issuing its Approvals and to help explain technical terms and

---

[2] Although the Onshore Pipelines were previously known as the Las Flores Pipeline System, Petitioners refer to them here as the Onshore Pipelines, consistent with their Opening Brief, to avoid any confusion.

complex subject matter. Notably, the Approvals were issued on an emergency basis with no public process, which deprived Petitioners and the public the opportunity to submit pertinent information. The Court should admit this extra-record evidence so that it can properly review whether PHMSA lawfully issued the Approvals.

Finally, the Court should grant Petitioners' request for judicial notice because the documents are all agency or judicial documents.

## ARGUMENT

**I.** **The Court Should Grant Petitioners' Request to Complete and Supplement the Record to Ensure Meaningful Review of PHMSA's Actions.**

### A.    Standard of Review

The Administrative Procedure Act (APA) provides that a court's review of agency actions shall be based on "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. A motion to compel completion of the administrative record and a motion to supplement the record with extra-record evidence both seek to expand the evidence before the Court beyond the administrative record compiled by the agency so that judicial review of the agency's decision can be effective and meaningful. *See, e.g. Blue Mts. Biodiversity Proj. v. Jeffries*, 99 F.4th 438, 452 (9th Cir. 2024) ("[The] requirement that the administrative record be complete is critical for effective judicial review"); *California v. Ross*, 358 F. Supp. 3d 965,

3

1008 (N.D. Cal. 2019) (In certain circumstances, "consideration of extra-record evidence is 'necessary to a meaningful judicial review' of the agency's actual decision-making process" (citation omitted)). However, motions to complete and supplement are evaluated under different standards.

A motion to compel completion of the record stems from the fact that, in evaluating the validity of an agency decision under the APA, the Court must consider "the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (The whole administrative record "includes everything that was before the agency pertaining to the merits of its decision.").

The "whole administrative record, however, is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation modified). Rather, "[t]he 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* (citations omitted). "An incomplete record must be viewed as a 'fictional account of the

4

actual decisionmaking process.'" *Portland Audubon*, 984 F.2d at 1548 (citation omitted).

Although agencies are entitled to "a strong presumption" that records they compile are complete, to rebut that presumption, a movant need only "identify the allegedly omitted materials with sufficient specificity" and provide "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Oceana v. Pritzker*, No. 16-cv-06784-LHK, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (citation omitted).

A movant can also rebut the presumption by showing "the agency applied the wrong standard in compiling the record . . . where [the] agency excluded documents because they did not 'form the basis' for the agency's determination." *Id.* (citation omitted). A showing of "bad faith or improper motive" is not needed. *Id.* (citation omitted).

In contrast, a motion to supplement the record seeks to admit evidence that is not part of the record. Supplementation is allowed (1) when "necessary to determine whether the agency has considered all relevant factors and has explained its decision"; (2) when the agency "relied on documents not in the record"; (3) "to explain technical terms or complex subject matter"; or (4) upon a strong showing of agency bad faith. *Lands Council v. Forester of Region One of the U.S. Forest Serv.*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citation omitted). The exceptions exist

5

to ensure courts can conduct the in-depth review of agency decisions required by the APA. After all, a "court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters." *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir. 1980).

### B. Completion of the Record Is Appropriate Because PHMSA Either Directly or Indirectly Considered Documents Not in the Lodged Record

The Court can and should grant Petitioners' request to complete the limited Record to ensure meaningful judicial review of PHMSA's actions, including documents PHMSA either directly or indirectly considered to make its findings and conclusions. *Thompson*, 885 F.2d at 555.

Petitioners specifically request that the Court complete the Record with Petitioners' Supplemental Evidence, Documents 5, 6–12, 14, and 17. Document 6 is PHMSA's National Pipeline Mapping System Public Viewer showing the location of the Onshore Pipelines. PHMSA certainly considered the route of the Onshore Pipelines when issuing its Approvals.

The other documents are legal and administrative actions related to Sable Offshore Corp. ("Sable") and its efforts to restart the Onshore Pipelines at issue in this case.

6

Document 5 is the Santa Barbara County Board of Supervisors' December 16, 2025 Decision Letter finding that Sable lacks the skills and resources necessary to safely operate the Onshore Pipelines.

Document 7 is an October 22, 2025 letter from the California Office of the State Fire Marshal (OSFM) to Sable explaining why OSFM could not legally approve Sable's Restart Plans, which PHMSA approved in December.

Document 8 is the civil complaint in *People v. Sable Offshore Corp.*, No. 25CV06285, filed against Sable on October 3, 2025 for knowingly discharging dredged or fill material into waters of the United States when conducting work along the Onshore Pipelines.

Document 9 is Sable's September 29, 2025 complaint in *Sable Offshore Corp. v. California*, No. BCV2510350, challenging Senate Bill No. 237, which requires a Coastal Development Permit prior to restarting oil and gas infrastructure that has been out of service, inactive, or idled for more than five years, including the Onshore Pipelines.

Document 10 is a criminal complaint filed against Sable on September 16, 2025, *People v. Sable Offshore Corp.*, No. 25CR07677, for knowingly discharging dredged or fill material into waters of the United States when conducting work along the Onshore Pipelines.

7

Document 11 is the Santa Barbara Superior Court's June 10, 2025 Order granting a Preliminary Injunction in Sable's litigation with the California Coastal Commission, *Sable Offshore Corp. v. California Coastal Commission*, No. 25CV00974, enjoining Sable from undertaking any repairs to the portion of the Onshore Pipelines in the Coastal Zone—a consequence of its violations of state law.

Document 12 contains excerpts from the California Coastal Commission's May 28, 2025, Staff Report ordering Sable to Cease and Desist from conducting any further repair work on the Onshore Pipelines due to significant impacts to coastal resources and issuing an $18 million administrative civil penalty.

Document 14 is the Regional Water Quality Control Board's April 2025 Resolution R3-2025-0024 authorizing referral of Sable's Onshore Pipeline-related water quality violations to the California Attorney General for judicial civil enforcement.

Document 17 contains excerpts of Santa Barbara County's Conditions of Approval for the Santa Ynez Unit Expansion Project, 87-DP-32cz (February 2025).

Faced with these state and local actions that prohibited or frustrated Sable's efforts to restart, Sable turned to PHMSA with specific requests that it intervene and circumvent state authority. It is therefore reasonable that Sable made PHMSA

8

aware of each of these documents, which served as the impetus for its requests, or that the agency was otherwise aware of these proceedings and information when it agreed to intervene on Sable's behalf. Thus, the documents were likely considered by PHMSA, either directly or indirectly, in determining whether to issue the Approvals, and they should be in the Record. *See Thompson*, 885 F.2d at 556. Petitioners' "reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record" rebuts any presumption that PHMSA's Record is complete. *Oceana*, 2017 WL 2670733, at *2 (citation omitted).

Given that these documents existed before PHMSA issued the Approvals, demonstrate the legal and regulatory framework Sable was navigating when it actively sought the intervention of PHMSA, and were more than likely "before the agency" by virtue of Sable's close communication with PHMSA, completion of the Record with these documents is warranted.

**C.** **The Court Should Allow Supplementation of the Record With Extra-Record Evidence That Fits Within Well-Established Exceptions**

The Court should also grant Petitioners' request to supplement the Record with extra-record evidence consisting of the Declarations of Clayton Bodell, Paasha Mahdavi, and Lawrence Hunt, filed concurrently, and Petitioners' Supplemental Evidence, Documents 4, 13, 15–16, 18, 19–21, and 24–29. These

9

declarations and documents demonstrate highly relevant factors that PHMSA failed to adequately consider in issuing the Approvals. They therefore satisfy an exception to the general rule that review of agency actions is limited to the Record.[3] *Lands Council*, 395 F.3d at 1030.

This case is unusual in that by proceeding on an "emergency" basis, PHMSA did not provide public notice or an opportunity to comment before issuing its approvals of the ESP and Restart Approval. Thus, there was no opportunity for Petitioners, experts, or other members of the public to provide input and relevant information to inform the agency's decisions that would then be incorporated into PHMSA's Record. PHMSA cannot create an overly narrow Record and thereby limit effective judicial review of its actions when its decisionmaking process was completely shielded from public review and input.

For example, under the PSA, the Secretary can issue a waiver from pipeline safety regulations only "if the Secretary determines that the waiver is not inconsistent with pipeline safety." 49 U.S.C. § 60118(c)(2)(A)(ii); Br. 19. The Declaration of Clayton Bodell, a pipeline safety expert with over a decade of experience in the pipeline safety and integrity field and who was previously a

---

[3] If the Court denies Petitioners' request to complete the Record as to any documents, Petitioners request that the Court, alternatively, admit those documents as extra-record evidence, because they show that PHMSA failed to consider relevant factors or adequately explain its findings, as explained in Petitioners' Opening Brief.

PHMSA employee, shows that PHMSA failed to ensure that the Onshore Pipelines will be safe to operate and thus failed to ensure that the ESP is consistent with pipeline safety. Specifically, Mr. Bodell's declaration explains that the Onshore Pipelines' "progressive external corrosion threat remains unmitigated and likely to continue to pose a threat" and that their "future operation under the [Approvals], by Sable or any other operator, is likely to result in another failure." Bodell Decl. ¶¶ 77, 95. Because Mr. Bodell's declaration is necessary to demonstrate that PHMSA failed to consider relevant factors or adequately explain its decision that its Approvals are consistent with pipeline safety, it satisfies the standards for extra-record evidence.

The Declaration of Paasha Mahdavi, an expert in energy economics, statistics, and global energy policy, is similarly necessary to determine whether the agency has considered all relevant factors and has explained its decision. PHMSA's ESP Findings and Analysis rely heavily on Executive Order 14156, to conclude that the permit is necessary to address "an actual or impending emergency involving pipeline transportation" because it would "meet regional energy demands, reduce refinery feedstock prices, mitigate the risks of fuel shortages on the West Coast, and reduce United States dependency on imported oil and the associated energy security risks of such imports." 1-ER-21. However, Mr. Mahdavi's evaluation and February 2025 report, titled Economic Analysis of

11

Market Impacts of Resuming Oil and Gas Production from the Santa Ynez Unit, found that restarting the Onshore Pipelines will not markedly benefit statewide or national energy markets, nor would it significantly reduce foreign imports. Mahdavi Decl. ¶¶ 6–7.

Documents 15–16 and 19 are the U.S. Energy Information Administration's documents concerning the United States's crude oil and liquified natural gas production and exportation rates. They too demonstrate that there is no current energy emergency. Thus, they too satisfy the standards for extra-record evidence because they are necessary to demonstrate that PHMSA failed to consider relevant factors or adequately explain its decision that there is an ongoing energy emergency justifying the Approvals.

The Declaration of Lawrence Hunt, a herpetologist by training and a consulting biologist with over forty years of experience, is also necessary to demonstrate that PHMSA failed to consider relevant factors or adequately justify its Approvals. As explained in Petitioners' Opening Brief, under the National Environmental Policy Act, PHMSA was required to analyze the potentially affected environment and degree of the impacts when considering whether to issue its Approvals. Br. 61. Mr. Hunt's Declaration provides information that PHMSA failed to consider regarding the reasonably foreseeable significant impacts of repairing, maintaining, and operating the Onshore Pipelines—as authorized and

envisioned by the Approvals—on state and federal candidate, threatened, and endangered plants and wildlife, and their critical habitats, which live along the pipeline route. Hunt Decl. ¶ 3. For example, "wildlife that relies on aquatic and wetland habitats may be significantly impacted by the loss of their essential habitat, in addition to direct mortality from stream diversions and disruption of movement." *Id*. at ¶ 28. Additionally, "pipeline maintenance and repair, as well as oil spill containment and cleanup along the Cuyama Valley segment, could impact fully protected and other listed species known to occur in the area." *Id*. at ¶ 36. In his expert opinion, "Sable's repair, maintenance, and operation of the Onshore Pipelines would have a reasonably foreseeable significant effect on the environment." *Id*. at ¶ 4. This information, which PHMSA failed to consider, warrants supplementation of the Record.

Likewise, the environmental documents prepared for the Onshore Pipelines when initially constructed and for the proposed Pipeline Replacement Project following the 2015 spill also shed light on the environmental impacts of (and alternatives to) restart of the Onshore Pipelines, which PHMSA also failed to adequately consider when issuing the Approvals. Thus, supplementation of the record with the 1984 Draft Environmental Impact Statement (EIS) / Environmental Impact Report (EIR) for the Proposed Celeron/All American and Getty Pipeline Projects (Document 25)—which was incorporated into the final EIS/EIR for the

13

Onshore Pipelines and the March 2022 Plains Replacement Pipeline Project Administrative Draft Environmental Impact Report (Document 20) is warranted as they demonstrate unassessed environmental impacts of and alternatives to restart of the Onshore Pipelines, including those related to oil spill risk.

Additionally, as explained in Petitioners' Opening Brief, PHMSA failed to adequately analyze and consider the public interest when issuing the Approvals, as required by 49 U.S.C. section 60118(c)(2)(A)(i); Br. 56–59. Document 4 (California Air Resources Board Pollution Mapping Tool, Data from 2014 for Santa Barbara County), Document 13 (May 9, 2025, Posted Order from the California Department of Parks and Recreation closing Hollister Trail, Woodland Trail, and Las Cruces Trail in Gaviota State Park for repairs related to construction activity), and Document 21 (excerpts from the June 2021 California Department of Fish and Wildlife *et al.,* Refugio Beach Oil Spill Final Damage Assessment and Restoration) all show relevant public interest factors, such as lost recreation and public access days, oil spill damage, and greenhouse gas impacts associated with operating the very same Onshore Pipelines at issue in this case, which PHMSA failed to consider when issuing the Approvals.

Finally, Petitioners' Opening Brief also addresses at length why PHMSA lacks jurisdiction over the Onshore Pipelines, thereby rendering its Approvals invalid. Br. 24–40. As explained in Petitioners' brief, whether PHMSA has

jurisdiction over the pipelines turns, in part, on whether the Onshore Pipelines, Sable's oil and gas plant in Las Flores Canyon (the "LFC Facilities"), and an offshore pipeline that extends to Sable's offshore platforms form a single "pipeline facility," as the term is defined the Hazardous Liquid Pipeline Safety Act. To answer that question, it is necessary for the Court to assess how the LFC Facilities function, the process that occurs there, and the equipment that is used.

Document 27 (the 1982 Development Production Plan for the Santa Ynez Unit), Document 24 (September 1987 Cumulative Updates for the Santa Ynez Unit Development Production Plan), Document 18 (April 2024 Draft Air Pollution Control District Permit to Operate 5651-R8 and Part 70 Operating Permit 5651), Document 28 (the 1971 Supplemental Plans of Operations for the Santa Ynez Unit), Document 26 (the 1984 Final Environmental Impact Statement for the Santa Ynez Unit/Las Flores Canyon Development and Production Plan), and Document 23 (Plains All American Pipeline, L.P.'s Federal Energy Regulatory Commission (FERC) Tarriff Nos. 4 and 5) all describe various parts of the LFC Facilities, and thus bear directly on whether PHMSA appropriately asserted jurisdiction over the Onshore Pipelines in December. Accordingly, these documents are admissible extra-record evidence because they are not only necessary to determine whether PHMSA has considered all relevant factors but also help explain technical terms or complex subject matter.

15

The foregoing documents are precisely the type of extra-record information that courts within the Ninth Circuit have routinely admitted in reviewing claims under the APA. For example, in *Earth Island v. U.S. Forest Serv.*, the plaintiffs challenged an environmental analysis prepared by the Forest Service for two post-fires restoration projects that involved logging of burned trees. 442 F.3d 1147, 1152 (9th Cir. 2006), *abrogated on other grounds*, *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). The plaintiffs argued that the Forest Service's analysis had overpredicted tree mortality, meaning that many more trees would be cut than necessary to meet the goals of the projects. *Id.* at 1160. To support their arguments, the plaintiffs submitted extra-record, scientific evidence that identified errors in how the agency assessed tree mortality. *Id.* at 1161–63.

Rejecting the Forest Service's motion to strike, the Ninth Circuit held that "[w]e allow extra-record materials if necessary to 'determine whether the agency has considered all relevant factors and has explained its decision.' Because [the] expert declarations are offered for this purpose, they . . . are properly before this court on review." *Id.* at 1162 (citation omitted); s*ee also Nat'l Audubon Soc'y v. U.S. Forest Ser*v., 46 F.3d 1437, 1447–48 (9th Cir 1993) (admitting extra-record evidence where plaintiffs alleged the agency neglected to consider important environmental consequences); *Thompson*, 885 F.2d at 555 ("[A] reviewing court

16

can go outside the administrative record . . . to determine whether the agency considered all the relevant factors." (citations omitted)).

The Court should consider Petitioners' extra-record evidence in its review of the challenged PHMSA Approvals for the same reasons: they show key errors in PHMSA's analysis and that PHMSA failed to consider relevant factors or adequately explain its findings.

## II. The Court Should Grant Petitioners' Request for Judicial Notice of Administrative Agency and Judicial Documents

### A. Standard of Review

A fact is judicially noticeable when it "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Documents that are "matters of public record" whose "authenticity . . . is not contested" may be subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (citations omitted) (alteration in original), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

### B. The Documents Are Judicially Noticeable

Petitioners request judicial notice of Documents 1–28, which are all administrative agency and judicial records directly within the category of matters appropriate for judicial notice under the Federal Rules of Evidence. Documents 3–

17

7 and 12–28 are "public record[s] downloaded from a public agency's official website" or public records that government agencies directly provided to Petitioners, and their authenticity is not subject to reasonable dispute. *Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011); *accord Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025, n.2 (9th Cir. 2006); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities.").

Similarly, Documents 1–2, and 8–11 are official court records or documents served upon Petitioners in other legal matters by Sable, which are directly relevant to this matter by virtue of including similar claims or the same parties and whose authenticity cannot be reasonably questioned. Federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations omitted). Petitioners therefore respectfully request that the Court take judicial notice of these documents.

## CONCLUSION

The documents Petitioners have presented with their Motion (1) are necessary to ensure meaningful judicial review of evidence PHMSA directly or

indirectly considered, (2) fit well within the standards for admitting extra-record evidence to demonstrate that an agency has failed to consider relevant factors and adequately explain its findings, and (3) are proper for judicial notice. Petitioners therefore respectfully request that the Court grant their Motion.

Dated: March 23, 2026                    Respectfully submitted,

                                         *s/ Linda J. Krop*
                                         Linda Krop
                                         Margaret M. Hall
                                         Jeremy M. Frankel
                                         ENVIRONMENTAL DEFENSE CENTER
                                         *Counsel for Petitioners Environmental
                                         Defense Center, Get Oil Out!, Santa
                                         Barbara County Action Network, Sierra
                                         Club, and Santa Barbara Channelkeeper*

                                         *s/ Julie Teel Simmonds*
                                         Julie Teel Simmonds
                                         David Pettit
                                         Talia Nimmer
                                         CENTER FOR BIOLOGICAL DIVERSITY
                                         *Counsel for Petitioners Center for
                                         Biological Diversity and Wishtoyo
                                         Foundation*

19