UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 25-8059, consolidated with No. 26-508

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,
v.
PIPELINE & HAZARDOUS MATERIALS SAFETY ADMINISTRATION, et al.,
*Respondents*.

On Petition for Review of Actions by the Pipeline & Hazardous Materials Safety
Administration

## COMBINED OPPOSITION TO PETITIONERS' MOTIONS TO COMPLETE AND SUPPLEMENT THE ADMINISTRTIVE RECORD AND FOR JUDICIAL NOTICE

| | |
|---|---|
| Of Counsel: | ADAM R.F. GUSTAFSON |
| | *Principal Deputy Assistant Attorney General* |
| GREGORY ZERZAN | ROBERT N. STANDER |
| *General Counsel* | *Deputy Assistant Attorney General* |
| CHARLES E. ENLOE | |
| *Assistant General Counsel* | REBECCA JAFFE |
| ERIN D. HENDRIXSON | MATTHEW R. OAKES |
| *Attorney* | *Attorneys* |
| U.S. Department of Transportation | Environment and Natural Resources Division |
| | U.S. Department of Justice |
| KEITH J. COYLE | Post Office Box 7415 |
| *Chief Counsel* | Washington, D.C. 20044 |
| BENJAMIN FRED | matthew.oakes@usdoj.gov - (202) 598-0402 |
| *Assistant Chief Counsel* | |
| TIMOTHY O'SHEA | |
| KATHLEEN MAITLAND | |
| *Attorneys* | |
| Pipeline and Hazardous Materials | |
| Safety Administration | |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................2

BACKGROUND ...................................................................................................3

    A.    Factual Background.....................................................................3

    B.    Procedural Background ..............................................................6

STANDARD OF REVIEW ....................................................................................7

ARGUMENT .........................................................................................................9

I.    Environmental Petitioners seek to complete the record with documents that were not before PHMSA. .......................................................9

II.    Environmental Petitioners failed to establish that supplementation is warranted. ....................................................................10

    A.    The *Lands Council* "relevant factors" exception does not apply. ......................................................................................10

    B.    The *Lands Council* exception to explain technical terms and complex subject matter does not apply. ...................12

    C.    The Court should deny supplementing or taking judicial notice of documents that post-date the challenged decisions. ..................................................................................14

III.    The Court should deny Petitioners' requests for judicial notice. ..................15

    A.    Petitioners do not seek judicial notice of any particular facts....................................................................................16

    B.    Petitioners do not seek notice of easily confirmable facts.................17

CONCLUSION ....................................................................................................20

1

**INTRODUCTION**

Environmental Petitioners (a coalition of environmental groups) and California challenge two Pipeline and Hazardous Materials Safety Administration (PHMSA) actions: PHMSA's December 23, 2025, grant of an "Emergency Special Permit" to Sable Offshore Corp., under the Pipeline Safety Act, 49 U.S.C. Section 60118(c)(2)(A), and PHMSA's December 22, 2025, approval of a Restart Plan for the Las Flores Pipeline (also called pipeline segments CA-324 and CA-325). Environmental Petitioners ask the Court to supplement the record with 13 documents (including three of Petitioners' "expert" declarations containing more than 250 pages of extra-record material), to complete the record with 10 documents, and to take judicial notice of 28 documents (which include all of the proposed supplemental documents except for their three declarations, all of the documents they propose to complete the record, and eight additional documents). California has also moved to supplement the record with four additional documents.

Federal Respondents agree that four of documents identified by California, as well as two of the documents identified by Environmental Petitioners, belong in the record. Federal Respondents will file a revised certified index with these six documents shortly. Petitioners' motions largely seek to introduce evidence that goes to the internal functions of the Las Flores Canyon facility. Upon review of

2

those motions PHMSA reviewed its files and discovered one additional record document, a December 2025 slides deck provided by Sable Offshore Corporation, that discusses the operations of that facility. Federal Respondents will add that document to the revised certified index as well, and when that revised index is filed, we will share a copy of that document with Petitioners.

The Court should deny Environmental Petitioners' motion to add the remaining documents to the record or judicially notice those documents. The Court reviews PHMSA's decisions under the Administrative Procedure Act (APA), and its review must be based on the administrative record already in existence and before the agency at the time of its decision—not on a new record first created in this Court. Additionally, many of the materials Environmental Petitioners seek to add to the record did not exist when PHMSA made the challenged decisions, and Environmental Petitioners cannot ask the Court to review PHMSA's decisions based on materials that postdate the agency's actions.

The chart at the end of this brief lists the documents identified in Environmental Petitioners' motion.

## BACKGROUND

### A. Factual Background

Pursuant to the Pipeline Safety Act, 49 U.S.C. § 60102(a)(2), PHMSA has regulatory authority over safety standards for pipelines. *See* 49 C.F.R. pts. 190–

199. States can regulate intrastate pipelines if their regulatory programs satisfy certain requirements. 49 U.S.C. § 60105. States are preempted from regulating interstate pipelines. *Id.* § 60104(c).

This case involves PHMSA's grant of a regulatory compliance waiver and an emergency special permit to Sable Offshore Corporation. Sable purchased Lines CA-324 and CA-325 in 2022. In 2024, Sable acquired three offshore drilling platforms off the coast of California and offshore subsea pipeline segments that transport oil from those platforms to onshore pipeline segments and a processing facility. 2-ER-29.[1] Thus, the offshore operations are connected to CA-324 and CA-325.

CA-324 and CA-325 were inoperative from 2015 to 2026. Both lines were shut down in 2015 following a rupture of CA-324, resulting from an oil spill. 2-ER-219. In 2020, PHMSA and several federal and California state agencies entered into a consent decree with the then-owner of CA-324 and CA-325 (Plains) to settle alleged violations of the Pipeline Safety Act and other claims related to the spill. *United States v. Plains All Am. Pipeline, L.P.*, No. 2:20-cv-02415 (C.D. Cal.); 2-ER-223-24, 261. Following the shutdown of CA-324 and CA-325, PHMSA treated both segments as an interstate pipeline for regulatory purposes,

---

[1] The ER references are to the excerpts of record filed with Environmental Petitioners' opening brief.

4

and the consent decree required Plains to obtain approval from the California Office of the State Fire Marshal of a restart plan. 2-ER-309-316. Sable agreed to be bound by certain terms of the consent decree when it purchased CA-324 and CA-325. 2-ER-205-212.

In November 2025, Sable asked PHMSA to concur with its determination that, based on its planned operation of CA-324 and CA-325, the lines are segments of an interstate pipeline system transporting oil from the Outer Continental Shelf into California. After conducting onsite inspections in December 2025, PHMSA informed Sable that it agreed with its determination. 1-ER-25-27. In December 2025, PHMSA reviewed and approved Sable's plan for restarting Lines CA-324 and CA-325. 1-ER-23-24.

In addition, in December 2025, Sable applied to PHMSA for an emergency special permit that would waive its obligation to comply with the requirement to remediate corrosion along longitudinal pipeline seams within 180 days of discovering the corrosion. 2-ER-29-68. PHMSA granted that application, waiving Sable's obligation to comply with that requirement for 60 days and imposing extensive protective conditions that exceeded the standards in its regulations. 1-ER-25.

### B.     Procedural Background

Environmental Petitioners challenge both the emergency special permit and PHMSA's approval of Sable's restart plan.  ACMS 1.1.  The United States filed a certified index for the administrative record on January 13, 2026.  ACMS 25.1. Linda Daugherty, PHMSA's Acting Associate Administrator for Pipeline Safety, certified that the material described in the certified index constitutes the complete administrative record pertaining to this matter.  Dkt. 18.1.  The index lists various materials, including corrective action orders and investigation reports related to the pipeline.  It also lists documents related to the federal enforcement action following the oil spill, and documents related to development and implementation of the consent decree related to that action.  Additionally, the record contains documents regarding PHMSA's consideration of whether the Pipeline is an "interstate" pipeline and documents regarding PHMSA's consideration of Sable's application for an emergency special permit.

California filed a separate petition for review on January 23, 2026, challenging the same two administrative actions, and challenging a December 17, 2025, letter in which PHMSA stated that the Las Flores Pipeline is an interstate pipeline subject to PHMSA's jurisdiction.  *State of California v. PHMSA*, No. 26-508.  The Court consolidated the two cases.  On March 5, 2026, the United States

6

filed an updated certified index that accounted for the additional agency action challenged by California.

## STANDARD OF REVIEW

The APA provides that judicial review is based on "the whole record or those parts of it cited by a party." 5 U.S.C. § 706(2). The "whole record" is the "full administrative record" before the agency decisionmaker at the time of the decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971). The "record on review" is "(1) the order involved; (2) any findings or report on which it is based; and (3) the pleadings, evidence, and other parts of the proceedings before the agency." Fed. R. App. P. 16(a). Although the Court may direct the filing of a supplemental administrative record, supplementation is not the norm. *See* Fed. R. App. P. 16(b) (discussing "omissions from or misstatements in the record"). Judicial review of PHMSA's decision under the APA must be focused on the "administrative record already in existence"—not on a "new record" first created in this Court. *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

In this Circuit, completing the record and supplementing the record are distinct concepts. Courts may grant a motion to complete the administrative record where the agency has not submitted the "whole" record. *See* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a

party ....").  Thus, the process of "completing" the record adds documents to the record that should have been in the agency's original compilation, ensuring that all materials the agency relied upon are available for judicial review.  *Center for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010).

Supplementing the record adds materials that were not before the agency during its decision-making process.  *Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019).  The Ninth Circuit allows supplementation of an administrative record in four limited circumstances where the evidence (1) is necessary to determine " 'whether the agency has considered all relevant factors and has explained its decision,' " (2) is necessary to determine whether "'the agency has relied on documents not in the record,' (3) 'is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'"  *Lands Council v. Powell,* 395 F.3d 1019, 1030 (9th Cir. 2004) quoting *Sw. Ctr. for Biological Diversity v. U.S.F.S.,* 100 F.3d 1443, 1450 (9th Cir. 1996).  The record review "exceptions are narrowly construed, and the party invoking them has a heavy burden to show that the additional materials sought are necessary to adequately review the agency decision." *Arizona Mining Reform Coal. v. United States Forest Serv.*, ---F. 4th---, 2026 WL 711200, at *9 (9th Cir. Mar. 13, 2026) (cleaned up).

## ARGUMENT

**I.     Environmental Petitioners seek to complete the record with documents that were not before PHMSA.**

The Court should not complete the record with Environmental Petitioners' documents 5, 8-12, 14, and 17 because these documents were not before PHMSA at the time of the decision. These documents include reports from various California state agencies and various state court filings. None of the documents were directed to the United States. Documents 8, 9, and 10 are complaints in various state court actions where the United States was not a party. Document 11 is an order in a state court case where the United States is not a party. Document 14 is a California state agency's enforcement referral to the California Attorney General. Document 17 sets out modified conditions of approval issued by the County of Santa Barbara for an expansion project related to the Santa Ynez Unit, the offshore oil and gas field in federal waters off Santa Barbara County to which the Las Flores Pipeline connects. None of these documents were directly or indirectly considered by PHMSA and these documents were not before the agency at the time the challenged decisions were made. *See Thompson v. U.S. Dept. of Labor*, 885 F.2d 551 (1989) (recognizing the scope of 'whole' administrative record . . . consists of all documents directly or indirectly considered). Such documents are not properly part of the administrative record.

9

PHMSA's designation of the administrative record, like any established administrative procedure, is subject to a "presumption of regularity." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). *Accord Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024). Environmental Petitioners contend that the documents "were likely considered by PHMSA, either directly or indirectly" in determining the Approvals. Mot. 9. But they are incorrect, and Petitioners have failed to establish PHMSA considered any of these documents in its decision-making process for *this* action. Petitioners' mere "speculation that the agency must have considered more documents" is not a basis to grant their motion; it is a basis to deny their motion. *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021).

## II. Environmental Petitioners failed to establish that supplementation is warranted.

Environmental Petitioners argue that supplementation is appropriate based on two exceptions identified in *Lands Council* to demonstrate PHMSA failed to consider relevant and critical factors and to help explain technical terms. 395 F.3d at 1030. But they fail to show that either exception applies.

### A. The *Lands Council* "relevant factors" exception does not apply.

Environmental Petitioners invoke the first *Lands Council* exception—the "relevant factors" exception—to argue that 14 documents (Documents 4, 13, 15-

10

16, 18, 19-21, and 24-29) "demonstrate highly relevant factors" that PHMSA failed to consider. Mot. to Supp. at 10 (Dkt. 56.1). They also seek to supplement the record with their three post-decisional declarations. The "relevant factors" exception does not apply here.

The "relevant factors" exception applies when supplementation "is necessary to determine if the agency has considered all factors and explained its decision." *Lands Council*, 395 F.3d at 1030. The exception is "the most difficult to apply" because it permits a court to "admit evidence" outside the record "only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). *See also Fence Creek Cattle Co. v. U.S. Forest Service*, 602 F.3d 1125, 1131 (9th Cir. 2010) (movant faces a "heavy burden to show that the additional materials sought are necessary to adequately review the [agency's] decision"). Put differently, the relevant factors exception permits courts to "consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis," but it does not permit courts "to use extra-record evidence to judge the wisdom of the agency's action." *San Luis & Delta-Mendota Water Authority*, 776 F.3d at 993.

11

For example, this Court denied motions to supplement an administrative record with emails that went to the propriety of the Federal Aviation Administration's motivation when modifying a departure route at an airport. *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009).

Environmental Petitioners failed to meet their heavy burden of establishing that the additional materials are necessary to adequately review PHMSA's decisions here. No statutory or regulatory requirement requires PHMSA to consider the requested materials, and they are unnecessary for the Court to adjudicate this case.

## B. The *Lands Council* exception to explain technical terms and complex subject matter does not apply.

Environmental Petitioners also seek to apply a second *Lands Council* exception, arguing that consideration of extra-record evidence, including their "expert" declarations, is necessary "to explain technical terms or complex subject matter." Mot. 15. Specifically, Environmental Petitioners seek to introduce Documents 18, 23-24, and 26-28 to describe various parts of Sable's oil and gas plan in Las Flores Canyon. *Id.* However, these documents were not before PHMSA when it was making its decision, and the technical information Petitioners seek to introduce is not necessary to make the decisions challenged in this action.

Petitioners cite *Earth Island. v. U.S. Forest Serv.*, 442 F.3d 1147 (9th Cir. 2006), *abrogated on other grounds*, *Winter v. Nat. Res. Def. Council*, 555 U.S. 7

12

(2008) to support their position that their extra-record information is appropriate here. But *Earth Island* predates *Lands Council* and other Ninth Circuit cases that emphasize that the record view "exceptions are narrowly construed and applied." Lands Council, 395 F.3d at 1030; *see also Arizona Mining Reform Coal.*, ---F. 4th---, 2026 WL 711200, at *9. In addition, this case differs from the facts presented in *Earth Island*. In *Earth Island* the Court was assessing whether the Forest Service complied with the National Environmental Policy Act in approving various timber sales. 442 F.3d at 1160. The evidence in that case went to proposed tree mortality after two forest fires, an issue raised in the agency record. *Id.* This Court admitted declarations specifically to determine whether the agency considered relevant factors when assessing tree mortality, a factor that the Forest Service agreed was relevant to its analysis. *Id.* at 1161-62.

Environmental Petitioners do not point to a specific technical issue that needs context or development. Instead, they assert generally that many hundreds of pages of extra-record evidence are needed to "show key errors in PHMSA's analysis." Mot. at 17. They use that same general claim to support introducing a conflicting safety opinion by a former PHMSA employee, Mot. 10-11, the opinion of an economist on the state of the economy, Mot. 11-12, and a herpetologist who speaks to the impact a hypothetical future oil spill could have, Mot. 12-13, and other supporting documents. In *Earth Island*, the Court was seeking context for a

13

specific question, which was whether the Forest Service considered relevant factors when assessing tree mortality. Here, by contrast, Environmental Petitioners attempt to justify supplementation with vague and general claims. The Court should reject that attempt. Judicial review is properly focused on evaluating the agency's decision-making process based on information actually before the agency, not on some discovery-like attempt to insert a huge volume of additional information. *See Camp v. Pitts*, 411 at 142.

**C.** **The Court should deny supplementing or taking judicial notice of documents that post-date the challenged decisions.**

Environmental Petitioners request supplementation and/or judicial notice of Petitioners' documents 1-4, but they all post-date the decisions challenged here and post decisional information is not part of the record. As this Court has recognized "exceptions to the normal rule regarding consideration of extra-record materials 'only appl[y] to information available at the time, not post-decisional information.'" *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (cleaned up). *See also Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (Parties may not use "post-decision information as a new rationalization either for sustaining or attacking the Agency's decision.").

Additionally, Environmental Petitioners request supplementation of the record to include three declarations—all of which post-date the decisions at issue

14

here. The declarations are from a pipeline engineer, providing his perspective on a range of pipeline safety issues; a herpetologist and biologist, providing purported expert opinions on the potential impacts of repairing, maintaining, and operating the Las Flores Pipeline system; and an economist, statistician, and energy policy professional, providing her opinions regarding whether restarting oil and gas production from the las Flores pipeline would reduce the need to import foreign oil. Dkt. 56.6, 56.7, 56.8.

None of these declarations were before PHMSA at the time the challenged decisions were finalized. All three declarations post-date the decisions challenged here. The Court must limit its review to the administrative record that existed at the time PHMSA made its decisions, not a new record of Petitioners' making during judicial review. *Camp v. Pitts*, 411 U.S. at 142.

## III. The Court should deny Petitioners' requests for judicial notice.

Aside from their requests to supplement or complete the record with 23 documents, Environmental Petitioners also ask the Court to take judicial notice of 20 of those documents plus another 8 documents. California asks the Court to take judicial notice of an additional 4 documents. Under Federal Rule of Evidence 201, this Court may take judicial notice of "a fact that is not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction" or "(2) can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned." The Ninth Circuit has accordingly urged the district courts to be cautious in taking judicial notice under Rule 201. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir.2005). The documents provided by Environmental Petitioners and California do not meet either of these conditions.

### A. Petitioners do not seek judicial notice of any particular facts.

Petitioners' motions fail to identify the specific facts in the hundreds of pages of submitted documents for which it contends the Court should take judicial notice. "A court must [] consider—and identify—which fact or facts it is noticing from" particular documents. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.; see also Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011) ("But these examples in no way indicate that courts must take judicial notice of a universe of litigation actions and articles when a party offers that universe without a careful delineation of the facts to be noticed."). Environmental Petitioners fail to identify particular facts they seek judicial notice of—a particularly egregious omission given that they ask the Court to take judicial notice of 28 documents comprising 398 pages.

16

"[T]aking judicial notice of facts is, as a matter of evidence law, a highly limited process." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)).  Petitioners' motion is both inconsistent with administrative review and with the limited nature of judicial notice.

**B.      Petitioners do not seek notice of easily confirmable facts.**

 "The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Just because a document is on the public docket in another case or part of a separate administrative proceeding before a different agency does not make it proper to introduce into the record here.  *See United States v. Awni Shauaib Zayyad*, 741 F.3d 452, 463–64 (4th Cir. 2014) (declining to take notice of facts introduced at a separate trial, as they do not constitute "indisputable facts" that would be thus "susceptible to judicial notice").

Environmental Petitioners seek judicial notice of 28 documents, and extensively discuss, cite, and rely on the analyses and conclusions in these documents to support the substance of their arguments in their opening brief.  They cite to those documents to establish "facts" such as that an emergency "must have some physical nexus with the actual pipeline facility at issue" or that "it is

17

reasonably foreseeable that restarting the Onshore Pipelines without addressing the underlying cause of the 2015 oil spill creates an increased likelihood of an oil spill that would significantly affect natural resources as well as public health and safety." Dkt. 53.1 at 48, 69. But these facts are not "generally known" and cannot be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). To the contrary, PHMSA disputes the accuracy of these assertions, which lie at the heart of the parties' dispute here.

What Environmental Petitioners ask the Court to do is very different from taking judicial notice of basic facts that are widely known and easily confirmable, such as "when does the sun rise or set," "what are the boundaries of a state," or "who was president in 1958." *Shahar*, 120 F.3d at 214. *See also Weaver v. United States*, 298 F.2d 496, 498 (5th Cir. 1962) ("Judicial notice may be taken of facts known at once with certainty by all the reasonably intelligent people in the community without the need of resorting to any evidential data at all.").

The Court should decline to take judicial notice of the 28 documents proffered because the "facts" Environmental Petitioners submit are complicated and their conclusions are disputed. Fed. R. Evid. 201(b).

Similarly, two of the four documents California seeks judicial notice of are judicial complaints, and California does not seek judicial notice of the mere

18

existence of these complaints.  Instead, California relies on the allegations contained in these complaints as if they are uncontroverted fact.  *See* Dkt. 23.1 at 6, 8, 9, 37.   While the Court can judicially notice that complaints were filed and routinely takes judicial notice of judgments and court decisions, *see United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), the facts of a complaint are supported by mere allegations.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

California also seeks judicial notice of a post-decisional policy issued by PHMSA, 1-CalPSE-49-51.  While PHMSA does not contest the validity of the referenced policy, its relevance is unclear.  And California also seeks notice of a slideshow prepared by the California State Lands Commission years ago that does not show the current status of the pipeline leases it depicts, 1-CalPST-153-76. These are not the type of easily confirmable facts for which judicial notice is appropriate, and the relevance of this information is unclear.  *See Government of Virgin Islands v. Gereau*, 523 F.2d 140, 226 (3d Cir. 1975) (recognizing that a hallmark of facts properly subject to judicial notice is that they be either matters of common knowledge or capable of immediate and accurate determination). California's motion for judicial notice should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Environmental Petitioners'
motion (except for the two documents that PHMSA is adding to the record) and
should grant portions of California's motion to allow completion and
supplementation but should deny California's request for judicial notice.

Of Counsel:

Respectfully submitted,

GREGORY ZERZAN
*General Counsel*
CHARLES E. ENLOE
*Assistant General Counsel*
ERIN D. HENDRIXSON
*Attorney*
U.S. Department of Transportation

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

/s/   *Matthew R. Oakes*

KEITH J. COYLE
*Chief Counsel*
BENJAMIN FRED
*Assistant Chief Counsel*
TIMOTHY O'SHEA
KATHLEEN MAITLAND
*Attorneys*
Pipeline and Hazardous Materials
Safety Administration

REBECCA JAFFE
MATTHEW R. OAKES
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
matthew.oakes@usdoj.gov

20

## ADDENDUM LISTING ENVIRONMENTAL PETITIONERS' PROPOSED SUPPLEMENTAL DOCUMENTS

Environmental Petitioners' proposed supplemental documents, along with the US response, are listed below. "RJN" indicates Petitioners' request for judicial notice. The first 28 documents correspond with Petitioners' supplemental evidence index (Dkt. 56.3). Petitioners' declarations are added as documents 29-31.

| Doc. # | Document | Date | Petitioners' Request | US Position | US Reason |
|---|---|---|---|---|---|
| 1 | Complaint, Sable v. CalGEM, (With Exhibits) | 2/17/2026 | RJN | Oppose | Post Decisional |
| 2 | Letter from Sable to PHMSA Re Expiration of Emergency Special Permit | 2/13/2026 | RJN | Oppose | Post Decisional |
| 3 | CEQ, Guidance on Emergencies and NEPA | 1/21/2026 | RJN | Oppose | Post Decisional |
| 4 | Cal. Air Resources Board, Pollution Mapping Tool (Data for Santa Barbara Co.) | 1/21/2026 | Supp. And RJN | Oppose | Post Decisional |
| 5 | Santa Barbara Board of Supervisors, Action Letter | 12/16/2025 | Complete and RJN | Oppose | Not before agency |
| 6 | PHMSA National Pipeline Mapping System, Public Viewer | Dec-25 | Complete and RJN | Agree to Supplement | |
| 7 | Letter from Cal. Office of State Fire Marshal to Sable Re State Waivers | 10/22/2025 | Complete and RJN | Agree to Complete | |
| 8 | Complaint, California v. Sable (CA State Ct. No. 25CV06285) | 10/3/2025 | Complete and RJN | Oppose | Not before agency |

21

| 9 | Complaint, Pac. Pipeline Co. v. California (CA State Ct. No. BCV2510350) (challenging SB 237) | 9/29/2025 | Complete and RJN | Oppose | Not before agency |
|---|---|---|---|---|---|
| 10 | Complaint, California v. Sable (CA State Ct. No. 25CR07677) | 9/16/2025 | Complete and RJN | Oppose | Not before agency |
| 11 | Order Granting Prel. Inj., Sable v. Cal. Coastal Comm'n (CA State Ct. No. 25CV00974) | 6/10/2025 | Complete and RJN | Oppose | Not before agency |
| 12 | Cal. Coastal Comm'n, Staff Report Re: Cease-and-Desist, Restoration Order, and Civil Penalty | 5/28/2025 | Complete and RJN | Oppose | Not before agency |
| 13 | Cal. Dep't of Parks & Rec., Posted Order Re: Trail Closure | 5/9/2025 | Supp. And RJN | Oppose | Not before agency |
| 14 | Cal. Regional Water Quality Control Board, Resolution R3-2025-0024 | 4/17/2025 | Complete and RJN | Oppose | Not before agency |
| 15 | Energy Information Administration, U.S. Crude Oil Exports Reached a New Record in 2024 | 4/10/2025 | Supp. And RJN | Oppose | Not before agency |
| 16 | Energy Information Administration, The United States Liquified Natural Gas Exports | 3/27/2025 | Supp. And RJN | Oppose | Not before agency |
| 17 | Conditions of Approval, Santa Ynez Unit Expansion Project | Feb. 2025 | Complete and RJN | Oppose | Not before agency |
| 18 | Draft Air Pollution Control District Permit | Mar-24 | Supp. And RJN | Oppose | Not before agency |
| 19 | Energy Information Administration, United | 3/11/2024 | Supp. And RJN | Oppose | Not before agency |

22

| | | | | | |
|---|---|---|---|---|---|
| | States Crude Oil Production | | | | |
| 20 | Draft Environmental Impact Report for the Santa Barbara Co. Plains Replacement Pipeline Project (Excerpt) | Mar. 2022 | Supp. And RJN | Oppose | Not before agency |
| 21 | Cal. Dep't of Fish & Wildlife, Refugio Beach Oil Spill Final Damage Assessment and Restoration Plan | Jun-21 | Supp. And RJN | Oppose | Not before agency |
| 22 | PHMSA, Analysis and Findings for Emergency Special Permit (Re Hurricane Sandy) | Nov. 2012 | RJN | Oppose | Not before agency in this decisionmaking process |
| 23 | Plains All American Pipeline, FERC Local Tariffs (Nos. 4 and 5) | 2/17/2000 | Supp. And RJN | Oppose | Not before agency |
| 24 | Santa Ynez Unit Development Production Plan Updates | Oct. 1987 | Supp. And RJN | Oppose | Not before agency |
| 25 | Draft Environmental Impact Statement for Proposed Celeron/All American and Getty Pipeline Projects | Oct. 1984 | Supp. And RJN | Oppose | Not before agency |
| 26 | Final Environmental Impact Statement for Santa Ynez Unit/Las Flores Development Production Plan | Jun-84 | Supp. And RJN | Oppose | Not before agency |
| 27 | Proposed Santa Ynez Unit Development Production Plan | Dec-82 | Supp. And RJN | Oppose | Not before agency |
| 28 | Supplemental Plan of Operations for the Santa Ynez Unit | 1971 | Supp. And RJN | Oppose | Not before agency |

| 29 | Declaration of Clayton Bodell | 3/21/2026 | Suppl. | Oppose | Post Decisional |
|----|-------------------------------|-----------|--------|--------|-----------------|
| 30 | Declaration of Paasha Mahdavi | Dec. 30,25 | Suppl. | Oppose | Post Decisional |
| 31 | Declaration of Lawrence Hunt | 3/19/2026 | Suppl. | Oppose | Post Decisional |

**CERTIFICATE OF COMPLIANCE**

I hereby certify:

1. This document complies with the length limitation of Circuit Rule 27-1(1)(d) because it is 4670 words, including words in the Addendum.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Matthew R. Oakes*
MATTHEW R. OAKES
*Attorney*

25