Nos. 25-8059, 26-508

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents*,

and

SABLE OFFSHORE CORP., et al.,
*Intervenors*.

On Petition for Review of Decisions Issued by the
Pipeline & Hazardous Materials Safety Administration

**PETITIONERS' REPLY ON MOTION TO COMPLETE AND
SUPPLEMENT THE RECORD AND FOR JUDICIAL NOTICE**

Linda Krop
Jeremy M. Frankel
Margaret M. Hall

Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
Tel: (805) 963-1622
lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
mhall@environmentaldefensecenter.org

*Attorneys for Petitioners Environmental
Defense Center, Get Oil Out!, Santa
Barbara County Action Network, Sierra
Club, and Santa Barbara Channelkeeper*

Julie Teel Simmonds
David Pettit
Talia Nimmer

Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
Tel: (510) 844-7100
jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

*Attorneys for Petitioners
Center for Biological Diversity
and Wishtoyo Foundation*

**INTRODUCTION**

This is an extraordinary direct review case in which Respondent Pipeline and Hazardous Materials Safety Administration (PHMSA) has advanced novel interpretations of the Pipeline Safety Act (PSA) to seize some of the most controversial facilities in California (the Onshore Pipelines) and immediately issued emergency approvals facilitating the restart thereof. Even more extraordinary, PHMSA improperly took all of these actions without any public process, depriving Petitioners of any opportunity to participate in the actions challenged herein.

Relevant here, PHMSA has seized on the public's exclusion from these proceedings to carefully curate an unduly narrow and self-serving record. And, remarkably, PHMSA has continued to do so *even after Petitioners filed their Opening Brief*. Indeed, after reviewing Petitioners' Opening Brief, PHMSA unilaterally supplemented the record with a newly "discovered" document, seemingly to aid in its defense. Yet Petitioners, PHMSA maintains, should not be permitted to introduce documents that are critical to this Court's understanding and evaluation of the facilities and issues in question.

The record prepared by PHMSA is not only patently incomplete, but, by design, renders it impossible for this Court to adequately review the propriety of PHMSA's actions, especially as it relates to threshold issues regarding the scope of

PHMSA's jurisdiction. Completion and supplementation of the record with, and judicial notice of, the documents proffered by Petitioners—most of which are agency documents—is essential for meaningful judicial review and, at this point, to ensure equity.

## ARGUMENT

While the parties agree as to the standards for completion, supplementation, and judicial notice, PHMSA and Intervenor Sable Offshore Corp. (Sable) cast Petitioners' additional documents as improperly seeking to second-guess PHMSA's policy judgment. PHMSA Opp'n 11, Dkt. No. 63; Sable Opp'n 11–13, Dkt. No. 65. Not so. Petitioners ask this Court to consider a limited number of documents for the sole reason that they are necessary to effectively assess whether PHMSA had authority to act, and if so, whether it did so properly within the bounds of its discretion. PHMSA's and Sable's arguments for keeping the record unduly narrow are unpersuasive. Tellingly, neither cite any case involving, as here, agency decisions made without any opportunity for public participation.

## I.    Completion of the Record Is Warranted

PHMSA does not dispute that completion of the record is appropriate for documents that an agency directly or indirectly considered. PHMSA Opp'n 9. Here, there are non-speculative grounds to believe that PHMSA considered the documents Petitioners have asked to complete the record with, even if only

2

indirectly. *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (The administrative record "consists of all documents and materials directly or *indirectly* considered . . . and includes evidence contrary to the agency's position" (citations omitted)).

The record reflects that PHMSA acted only after Sable approached it and requested the agency redesignate the Onshore Pipelines as interstate facilities. 1-ER-25. And the record likewise reflects that the impetus for PHMSA's actions was Sable's frustration with state impediments to restart the Onshore Pipelines. *See, e.g.,* Document 7 (OSFM letter to Sable denying restart approval); PHMSA Opp'n 21 (agreeing to add Document 7). Documents 5, 7–12, and 14 are representations of those impediments and were undoubtedly made known to PHMSA. Because these documents were thus either directly or indirectly before PHMSA, they must be made part of the record.

PHMSA cites *Goffney v. Becerra*, 995 F.3d 737 (9th Cir. 2021) and *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438 (9th Cir. 2024). *Goffney* is distinguishable because the plaintiff did not identify "any specific documents that he believe[d] to be missing." 995 F.4th at 747. In *Blue Mountains*, the plaintiff failed to show that the additional materials were "necessary to adequately review" the agency's decision. 99 F.4th at 446 (citation omitted). Moreover, in both *Goffney* and *Blue Mountains*, the plaintiffs had an opportunity to submit evidence

3

as part of the administrative process. In contrast, there was no public process here, and Petitioners have identified specific documents that are essential to the Court's review of the challenged actions.

Sable's opposition largely mirrors that of PHMSA's but also asserts that completion is inappropriate because some of the documents are unadjudicated complaints. Sable Opp'n 7- 8. Sable itself filed one of those complaints. *See* Document 9. Further, Sable's contends that Petitioners are offering "untested assertions" by citing Document 8 to show Sable's repair impacts are "well-documented," Sable Opp'n 8 (citing Opening Brief at 66), when the citation is to photographic evidence in the complaint.

Finally, Sable tries to characterize the Santa Barbara Board of Supervisors' December 23, 2026, Action Letter (Document 5) as post-decisional,[1] Sable Opp'n 9–10. But the letter and attached Findings of Denial encapsulate actions the Board took on December 16, 2026, predating PHMSA's approvals. Sable's objections should be rejected.

The Court should complete the record with the documents before PHMSA to ensure meaningful and complete judicial. However, should the Court deny Petitioners' completion request, their motion requested, in the alternative, that the Court allow *supplementation* of the record with these documents (Mot. to

---

[1] Petitioners inadvertently misdated the Letter itself in their PSE Index.

Complete 10 n.3, Dkt. No. 56), *which PHMSA and Sable failed to address*.

## II.     Supplementation Is Warranted

Supplementation is appropriate here to allow the court to determine whether PHMSA considered "all relevant factors" and to "explain technical terms or complex subject matter." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citation omitted). Notably, *Lands Council*, like the other cases PHMSA cites, involved a robust public process with one or more opportunities for public participation. The court there noted that "[n]ormally, if an Agency's administrative record is incomplete, we would expect litigants to seek to supplement the record in the agency before seeking to expand the record." *Id.* at 1029 n.10. Here, however, Petitioners had no opportunity to do so.

### A.     The Relevant Factors Exception Applies

Petitioners submitted evidence that is necessary to determine whether PHMSA considered all relevant factors, including whether the Onshore Pipelines are subject to PHMSA's jurisdiction; whether approval of the ESP was consistent with public safety; whether the approvals would cause environmental impacts; and whether they were required to meet an emergency need.

#### 1.     Expert Declarations

Contrary to PHMSA's contention that Petitioners seek to introduce "vague and general" expert declarations merely to explain technical terms or complex

subject matter (PHMSA Opp'n 12–14), Petitioners seek, first and foremost, to introduce three expert declarations *under the relevant-factors standard*. The Bodell declaration provides specific technical background and context for PHMSA's approvals and describes relevant factors PHMSA failed to consider under the PSA and NEPA, including important gaps in its explanation for how the Emergency Special Permit (ESP) was "not inconsistent with pipeline safety." 49 U.S.C. § 60118(c)(2)(A)(ii). The Mahdavi declaration provides specific energy and economic analyses demonstrating that PHMSA failed to consider relevant factors and appropriately explain how its approvals were "necessary to address an actual or impending emergency involving pipeline transportation,'" as the PSA requires. *Id*. § 60118(c)(2)(A)(iii). Finally, the Hunt declaration provides scientific information about environmental impact factors PHMSA failed to consider, as relevant to its determination that "the expected environmental impacts of the [Approvals] will not be significant." 1-ER-22.

### 2. LFC Facilities Documents

As explained in Petitioners' Motion and Opening Brief, whether PHMSA properly asserted jurisdiction over the Onshore Pipelines turns largely on whether the LFC Facilities can be considered a "pipeline facility" under the PSA—an inquiry that requires an in-depth examination of how the LFC Facilities function. At the time Petitioners wrote their Opening Brief, however, there was nothing in

the Record to explain what occurs at the LFC Facilities. Thus, Petitioners offered supplemental Documents 23–24, 26–28 to provide the comprehensive facility overview necessary for the Court to review PHMSA's jurisdiction.

After Petitioners filed their Opening Brief, PHMSA suddenly "discovered" a new document that it plans to add to the record: "a December 2025 slides deck provided by Sable Offshore Corporation, that discusses the operations of [the LFC Facilities]." PHMSA Opp'n 3. In other words, after reading Petitioners' Opening Brief, PHMSA intends to pad the record post hoc, seemingly to aid in its own defense, with a document Petitioners were not able to review or rely on. Yet, at the same time, PHMSA is asking this Court to *not* consider documents Petitioners were forced to offer (and rely on) to allow for adequate judicial review.

Equities aside, this newly discovered document is inadequate to explain the history, purpose, and operations of the LFC Facilities, and it does not serve as a substitute for Petitioners documents, which remain necessary for the Court to conduct judicial review. And, by adding Sable's slide-deck to the record, PHMSA has itself recognized the relevance of information germane to the functioning of the LFC Facilities, and thus all but conceded that the record ought to be supplemented with like documents offered by Petitioners.

### 3. Agency Oil and Export Data

Documents 15, 16, and 19 (all U.S. Energy Information Administration

publications) provide data prepared by the United States itself that is absent from the record and against which the Court can evaluate the integrity of PHMSA's analysis—specifically, whether PHMSA considered all information relevant to the agency's blanket statements that its approvals were necessary to "meet regional energy demands, reduce refinery feedstock prices, mitigate the risks of fuel shortages on the West Coast, and reduce United States dependency on imported oil and the associated energy security risks of such imports." Mot. 11 (quoting 1-ER-21).

### 4. Agency Environmental Documents

Contrary to Sable's contention that Documents 20 and 25 (environmental documents prepared for the Onshore Pipelines when initially constructed and for the proposed Pipeline Replacement Project following the 2015 spill) are "immaterial," Sable Opp'n 13, they highlight relevant factors PHMSA failed to consider in its analyses, including unassessed oil spill risks and environmental impacts. Indeed, PHMSA itself recognizes their relevance, since its improper, post hoc Draft Environmental Assessment for the ESP explicitly references these documents. *See* https://downloads.regulations.gov/PHMSA-2026-0464-0005/attachment_1.pdf.

### 5. Public Interest Documents

Under the PSA, PHMSA cannot issue an ESP unless it is in the public

8

interest. 49 U.S.C. § 60118(c)(2)(A)(i). Documents 4, 13, and 21 all illuminate relevant factors PHMSA failed to consider in making its public interest determination, including lost recreation and public access days, oil spill damage, and greenhouse gas impacts associated with operating the Onshore Pipelines.

Although Sable takes issue specifically with the California Air Resources Board's Pollution Mapping Tool's greenhouse gas emission quantification for the Santa Ynez Unit (Sable Opp'n 14–15), its own ESP application to PHMSA puts greenhouse gasses at issue by stating that restarting the pipelines will "[r]educe greenhouse gas emissions by approximately 500,000 tons." 2-ER-44.

### B. The Technical Explanation Exception Applies

The expert declarations discussed above are also appropriate "to explain technical terms or complex subject matter." *Lands Council*, 395 F.3d at 1029 (citation omitted). So too are the documents pertaining to the LFC Facilities. Although PHMSA determined, at Sable's behest, that "Sable operates the Las Flores Pipeline assets as a single pipeline system," 1-ER-25, it notes that "[d]etermining whether a hazardous liquid pipeline is an interstate or intrastate pipeline requires a factual inquiry." 1-ER-26. Here, that factual inquiry involves assessing the technical functions of the LFC Facilities, which the documents are necessary to explain. Mot. 15. That the documents are "dated" does not detract from their eligibility or relevance, as Sable argues. Sable Opp'n 15.

9

Lastly, Sable argues that the record "already includes documents that provide sufficient technical information," but it only references documents that pertain to the Onshore Pipelines, not the LFC Facilities. Sable Opp'n 15. Plus, PHMSA's post hoc supplementation of the record belies Sable's claim.

### III.  Judicial Notice Is Appropriate and Warranted

Finally, PHMSA wrongly asserts that Petitioners fail to identify particular facts. PHMSA Opp'n 17. Petitioners' Opening Brief clearly identifies the precise documents, facts, and corresponding pages for which it is seeking judicial notice. Ironically, PHMSA and Sable take issue with documents they themselves prepared or referenced. PHMSA Opp'n 17–18 (citing Documents 22 & 20); Sable Opp'n 18 (citing Documents 1 & 9). Additionally, despite Sable's claim that some of the agency documents are "preliminary" or "non-final" (Sable Opp'n 18), the documents reflect adopted agency actions taken after hearings and agency consideration and investigation (*see* Documents 5, 12, & 14). PHMSA and Sable cannot reasonably dispute the existence or content of these documents.

### CONCLUSION

Petitioners' Motion establishes that each of the documents falls squarely within completion, supplementation, and/or judicial notice parameters. Petitioners' Motion should be granted to ensure meaningful and complete judicial review.

Dated: April 23, 2026

Respectfully submitted,

*s/ Linda J. Krop*
Linda Krop
Margaret M. Hall
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE CENTER
*Counsel for Petitioners Environmental*
*Defense Center, Get Oil Out!, Santa*
*Barbara County Action Network, Sierra*
*Club, and Santa Barbara Channelkeeper*


*s/ Julie Teel Simmonds*
Julie Teel Simmonds
David Pettit
Talia Nimmer
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Petitioners Center for*
*Biological Diversity and Wishtoyo*
*Foundation*

11