No. 25-8059, consolidated with No. 26-508

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,

v.

PIPELINE & HAZARDOUS MATERIALS SAFETY ADMINISTRATION, et al.,
*Respondents*.

On Petition for Review of Actions by the Pipeline & Hazardous Materials Safety
Administration

**FEDERAL RESPONDENTS' MOTION TO DISMISS AS MOOT**

Of Counsel:


GREGORY ZERZAN
*General Counsel*
U.S. Dept. of Transportation

KEITH COYLE
*Chief Counsel*
BENJAMIN FRED
*Assistant Chief Counsel*
TIMOTHY O'SHEA
KATHLEEN MAITLAND
*Attorneys*
Pipeline and Hazardous Materials Safety
Administration

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
REBECCA JAFFE
MATTHEW R. OAKES
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
matthew.oakes@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

I.      Factual Background .................................................................................2

II.     Procedural History .................................................................................3

III.    On June 26, 2026, PHMSA issued a non-emergency special permit, a superseding jurisdictional determination, and a NEPA analysis, which supersede all the challenged agency actions..........................4

ARGUMENT ....................................................................................................6

I.      This case is moot. .................................................................................6

        A.      PHMSA has issued a non-emergency special permit, and the emergency special permit has expired and cannot be reinstated. ..................................................................................7

        B.      PHMSA's jurisdictional determination has been superseded by a new jurisdictional determination. ..............................9

        C.      PHMSA has conducted NEPA analysis with respect to the restart plan. ...............................................................11

II.     The mootness exception for conduct that is capable of repetition yet evading review does not apply. .............................................14

III.    Dismissing as moot is the most effective way to resolve the key disputed issue of jurisdiction. ...................................................15

CONCLUSION ................................................................................................16

CERTIFICATE OF COMPLIANCE ..................................................................17

i

## TABLE OF AUTHORITIES

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................ 7, 12

*American Rivers v. Nat'l Marine Fisheries Serv.*,
  126 F.3d 1118 (9th Cir. 1997) ............................................... 7

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ................................................................ 4

*Carter v. Veterans Admin.*,
  780 F.2d 1479 (9th Cir. 1986) ............................................... 2

*Ctr. for Biological Diversity v. Lohn*,
  511 F.3d 960 (9th Cir. 2007) ................................................. 14

*Doe v. Madison Sch. Dist. No. 321*,
  177 F.3d 789 (9th Cir. 1999) ................................................. 14

*Federal Election Commission v. Wis. Right to Life, Inc.*,
  551 U.S. 449 (2007) .............................................................. 14

*Feldman v. Bomar*,
  518 F.3d 637 (9th Cir. 2008) ................................................. 7

*Flowers Foods, Inc. v. Brock*, 146 S. Ct. 1358 (2026) ...................................... 9-10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
  528 U.S. 167 (2000) .............................................................. 12

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
  691 F.3d 1008 (9th Cir. 2012) ............................................... 10

*Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*,
  56 F.3d 1071 (9th Cir. 1995) ................................................. 10

*In the Matter of ONEOK NGL Pipeline, L.P., et al.*, 2016 WL 8315623 (PHMSA Oct. 12, 2016) ............................................................................10

*Lund v. Cowan*,
  5 F.4th 964 (9th Cir. 2021) ................................................... 8

*Maryland v. Louisiana*, 451 U.S. 725 (1981) .........................................................10

*McCormack v. Herzog,*
 788 F.3d 1017 (9th Cir. 2015) ............................................................ 13

*Native Village of Point Hope v. Salazar,*
 680 F.3d 1123 (9th Cir. 2012) ............................................................ 10

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.,*
 9 F.4th 1201 (9th Cir. 2021) ............................................................... 12

*Northwest Resource Info. Ctr., Inc. v. National Marine Fisheries Service,*
 56 F.3d 1060 (9th Cir. 1995) .............................................................. 14

*Pierce v. Ducey,*
 965 F.3d 1085 (9th Cir. 2020) ............................................................ 13

*Theodore Roosevelt Conserv. P'shp v. Salazar,*
 661 F.3d 66 (D.C. Cir. 2011) ............................................................... 1

## STATUTES AND REGULATIONS

49 C.F.R. § 195.452(h)(4)(iii)(H) .......................................................... 6

49 U.S.C. § 60118(c)(2)(B) .................................................................. 7, 8

91 Fed. Reg. 8,949 (Feb. 24, 2026) ................................................... 4, 11

U.S. Const. Art. III, § 2, cl. 1 ................................................................ 6

## INTRODUCTION

This appeal concerns challenges to the Pipeline and Hazardous Materials Safety Administration's (PHMSA) assertion of jurisdiction over the Santa Ynez Pipeline System and to PHMSA's approval of an emergency special permit and pipeline restart plan. All of these actions have now been superseded by new PHMSA actions. On June 26, 2026, PHMSA issued four documents: (1) a special permit that supplants the prior emergency special permit; (2) analysis and findings supporting the special permit; (3) a superseding jurisdictional determination; and (4) a finding of no significant environmental impact for the pipeline that applies to the restart plan. And previously, on February 20, 2026, PHMSA issued an environmental assessment under the National Environmental Policy Act (NEPA). As a result of these superseding actions, the disputes about the challenged actions are no longer live, and the Court cannot award effective relief. This case is moot and this Court lacks jurisdiction. Federal Respondents accordingly move to dismiss.

California has represented that it will provide its position to this motion in writing to the Court. Environmental Petitioners will oppose. Intervenor Sable Offshore Corporation supports this motion.

# BACKGROUND

## I.    Factual Background

The Santa Ynez Pipeline System starts at a group of crude oil production facilities on the Outer Continental Shelf off the California coast.  2-CalER-27, 32, 206.  Crude oil from the offshore facilities is pumped through onshore processing facilities to a terminal in Pentland, California, where the pipeline ends.  2 CalER-27,32, 206; SER-149-150.

In 2020, PHMSA and other federal and state agencies entered a consent decree with Plains Pipeline, LP, who at the time owned onshore segments of the Santa Ynez Pipeline System, to settle claims related to a 2015 oil spill.  2-ER-214-215.  That spill occurred at a segment of the Santa Ynez pipeline then known as Line 901 (and now called CA-324).  2-ER-19, 3-ER-373.  PHMSA subsequently issued a corrective action order directing Plains to shut down Line 901 and implement corrective measures.  PHMSA later extended the shutdown order and measures in the corrective action order to the adjoining Line 903 (which is now called CA-325).  2-ER-19.

The California Office of the State Fire Marshal (OSFM) is the pipeline safety authority for the State.  The consent decree designated the OSFM to oversee certain compliance terms because at the time Lines 901 and 903 were classified as intrastate pipelines subject to the State's regulatory authority rather than

PHMSA's.  *See* U.S. Br. 8-9.  Before the pipeline could be restarted the consent decree required Plains (1) to seek a waiver of a regulatory requirement through a special permit from the State, and (2) to obtain OSFM approval of a restart plan. 2-ER-36, 310, 312.

In 2024, Sable Offshore Corp. purchased Plains' successor and became the owner of the Santa Ynez Pipeline System.  2-ER-37.  Sable asked PHMSA to confirm that the pipeline would be regulated by federal authorities as an interstate pipeline because Sable intended to transport crude oil from offshore production facilities outside of California to the Pentland terminal located in California.  2-ER-69-72.  After conducting a multi-day onsite inspection PHMSA issued a December 17, 2026, letter confirming that CA-324/325 are interstate pipelines.  1-ER-25-27.  On December 22, 2025, acting in its regulatory role, PHMSA approved Sable's restart plan and, on December 23, 2025, PHMSA issued an emergency special permit waiving Sable's obligation to comply with certain remediation requirements that apply to corrosion along longitudinal pipeline seams.  1-ER-3, 23-24.

## II.    Procedural History

A group of environmental petitioners filed a petition for review challenging the emergency special permit and PHMSA's approval of the restart plan.  Case 25-8059, Dkt. 1.1.  Environmental Petitioners moved to stay PHMSA's emergency

special permit and restart plan approval, arguing that they were likely to succeed on the merits. ACMS 8.1. That motion was summarily denied. ACMS 21.1. California later filed its own petition for review, challenging the same two decisions and challenging PHMSA's December 17, 2026, letter. Case 26-508, ACMS 1.1. These two petitions were consolidated. Case 25-8059, ACMS 39.1. These consolidated cases have been fully briefed and are set for oral argument on July 7, 2026.

**III.  On June 26, 2026, PHMSA issued a non-emergency special permit, a superseding jurisdictional determination, and a NEPA analysis, which supersede all the challenged agency actions.**

On January 22, 2026, Sable applied for a special permit to replace the emergency special permit, which expired on February 21, 2026. Ex. 1:1.[1] PHMSA provided notice of Sable's application and solicited public comments. 91 Fed. Reg. 8,949 (Feb. 24, 2026).

Several commenters questioned whether PHMSA had regulatory jurisdiction over CA-324/325. Ex. 1:2. In response to those questions, PHMSA reexamined whether it has jurisdiction over the pipeline segments. Ex. 1:2.

---

[1] Factual citations are written "Ex.#:[document's page number]." A party may bring facts related to mootness to the Court's attention at any time. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997) ("It is the duty of counsel to bring to the federal tribunal's attention, without delay, facts that may raise a question of mootness").

Following that examination, PHMSA issued a new, more detailed, superseding jurisdictional determination on June 26, 2026. Ex.2. This new, standalone analysis is based on a new record. PHMSA, among other things, reviews the history of federal jurisdiction over pipeline safety and key precedent interpreting "interstate commerce" before determining the principles underlying the exercise of PHMSA jurisdiction and applying those principles to the transportation of crude oil by the Santa Ynez Pipeline System. Ex. 2. PHMSA also provides additional rational regarding why California is no longer the appropriate regulator. Ex. 2. PHMSA concludes that the Santa Ynez Pipeline System is an interstate hazardous liquid pipeline facility subject to PHMSA's regulatory oversight. Ex. 2:2, 16-20.

PHMSA completed an environmental assessment under NEPA on February 20, 2026, that assessed impacts associated with both the emergency special permit and the proposed non-emergency special permit. Ex. 3. That environmental assessment supported a finding of no significant impact issued on June 26, 2026. Ex. 4. These documents provide new NEPA analysis regarding the emergency special permit, the restart plan, and the superseding jurisdictional determination. Ex. 3: 2; Ex. 4:1, 10-11. Though PHMSA maintains that no NEPA analysis is necessary with respect to the restart plan, the agency conducted such an analysis

5

and determined that approval of the restart plan did not result in significant impacts to the human environment. Ex. 4:10-11.

Finally, and also on June 26, 2026, PHMSA granted a special permit that remains in place for 10 years and waives the requirements of 49 C.F.R. § 195.452(h)(4)(iii)(H), the same requirements that were waived by the emergency special permit. Ex. 5.

## ARGUMENT

### I.    This case is moot.

Each of Petitioners' claims have been mooted by PHMSA's February 20 and June 26, 2026, actions. The emergency special permit expired, and PHMSA has replaced it with the new June 26, 2026, special permit. Thus, Petitioners' challenges to the emergency special permit are moot. PHMSA has also made a new jurisdictional determination, supported by a new record, so Petitioners' challenges to the prior jurisdictional determination are moot as well. And as to NEPA, PHMSA has now completed a new NEPA analysis, so Petitioners' challenges to PHMSA's (alleged) failure to undertake NEPA review of its restart plan approval are also moot.

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. "A claim is moot if it has lost its character as a present, live controversy… If an

6

event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *American Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (internal quotation marks omitted). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (*quoting Alvarez v. Smith*, 559 U.S. 87, 93 (2009)). No live controversy exists with respect to Petitioners' claims.

### A. PHMSA has issued a non-emergency special permit, and the emergency special permit has expired and cannot be reinstated.

With respect to Petitioners' challenge to the emergency special permit, no effective relief is available and there is no present, live controversy. As the United States argued in its answering brief, U.S. Brief 42-43, the emergency special permit expired on February 21, 2026, so it is no longer in place (and no oil flowed through the pipeline during the 60-day period it was valid). 1-ER-3; 49 U.S.C. § 60118(c)(2)(B) (setting 60-day limit for emergency special permits). Thus, there

7

is no effective relief this Court could order with respect to the emergency special permit—vacating the permit would have no effect.

PHMSA's approval of the special permit on June 26, 2026, now makes it even clearer that Petitioners' challenges to the expired emergency special permit are moot. The new permit fully replaces the expired permit, and the new permit terms now control. The Court could only award effective relief against the new permit in a new petition for review. The emergency special permit is now dead *and* buried.

In their briefing, Petitioners argued that the emergency special permit might be renewed. Cal. Reply 35; Envtl. Reply 22. But that is now plainly wrong. An emergency special permit can only be issued if it is "necessary" to address an emergency, and no such permit is necessary because the non-emergency special permit is now in place addressing the same issues. *See* 49 U.S.C. § 60118(c)(2)(B).

Environmental Petitioners speculate that a new permit could be issued, challenged, stayed, and, in that event, Sable might seek to renew the terms of the expired and replaced emergency special permit. Envtl. Reply 23. These arguments are too contingent, speculative, or hypothetical to sustain their challenges to an expired and superseded emergency special permit. *See Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021) ("[S]peculative suppositions, far-fetched

8

fears, or remote possibilities of recurrence cannot overcome mootness."). And even if the new special permit were invalidated, PHMSA would not reissue the old emergency permit. Instead, Sable would be required to apply for a new permit, and any permit, if issued, would be based on different circumstances and different analysis than the expired emergency permit.

**B.      PHMSA's jurisdictional determination has been superseded by a new jurisdictional determination.**

Petitioners' challenges to PHMSA's assertion of jurisdiction and the adequacy of the record supporting the December 17, 2025, letter are also moot. The jurisdictional determination Petitioners challenge has now been replaced with a new, and superseding, jurisdictional determination based on a new record. Ex. 2. Thus, any flaws in the record on appeal in this case are now entirely academic. In considering Sable's application for a special permit PHMSA examined in greater detail the impact that the Las Flores Canyon facility had on the transportation of crude oil and studied more closely whether aspects of that facility, or other portions of the pipeline, function to break the continuous carriage of crude oil from federal waters to Pentland, California. Ex. 2:6-7, 16. PHMSA's superseding jurisdictional determination discusses the long line of Supreme cases holding that goods crossing state lines remain in interstate commerce all the way to their final destination, regardless of interruptions along the way, such as stops at warehouses and processing facilities. Ex. 2: 9-10, 18. *See also Flowers Foods, Inc. v. Brock*,

9

146 S. Ct. 1358 (2026); *Maryland v. Louisiana*, 451 U.S. 725 (1981). The determination also discusses PHMSA's consistent position, going back decades, that midstream processing facilities are within the scope of the Pipeline Safety Act. Ex. 2:16. *See also In the Matter of ONEOK NGL Pipeline, L.P., et al.*, 2016 WL 8315623 (PHMSA Oct. 12, 2016) appealed and resolved by consent agreement at 2018 WL 8058072 (PHMSA Oct. 23, 2018). If Petitioners disagree with PHMSA's assertion of jurisdiction, they should challenge PHMSA's new determination.

This Court has frequently dismissed appeals as moot in analogous circumstances. In *Native Village of Point Hope v. Salazar*, for example, plaintiffs challenged an oil exploration plan on the ground that it relied on a purportedly outdated spill response plan. This Court held that the claim became moot when the Secretary of the Interior approved an updated spill response plan. 680 F.3d 1123, 1131 (9th Cir. 2012). Similarly, this Court has repeatedly held that a challenge to an agency administrative action becomes moot when the agency takes a superseding action. *See, e.g., Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016-17 (9th Cir. 2012) (superseding biological opinion moots issues on appeal related to preceding biological opinion); *Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1074 (9th Cir. 1995) (same). When one action supersedes another, prospective challenges to the superseded

10

action generally become moot because the new action, not the original one, causes any potential injury. *See, e.g., Theodore Roosevelt Conserv. P'shp v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011). The reasoning of these cases is fully applicable here, where PHMSA has made a new jurisdictional determination on a new record.

### C. PHMSA has conducted NEPA analysis with respect to the restart plan.

Petitioners' challenges to the restart plan are moot. California's jurisdictional challenges to the restart plan are moot for the reasons discussed above, *supra* § I.B. *See* Cal. Br. at 54-57 (raising only jurisdictional challenges). Environmental Petitioners challenge the restart plan because PHMSA did not conduct any NEPA analysis before approving it. Envtl. Br. at 66-69. These claims are moot because PHMSA, on June 26, 2026, finalized new NEPA analysis and found that its approval of Sable's restart plan would have no significant impact on the human environment. Ex. 3; Ex. 4.

PHMSA's new NEPA analysis of the restart plan is integrated into its finding of no significant impact. Ex. 4: 10-11. PHMSA published a notice soliciting public comments on Sable's application for a special permit, 91 Fed. Reg. 8,949 (Feb. 24, 2026). Commenters argued that the scope of PHMSA's February 20, 2026, environmental assessment was too narrow. In response PHMSA considered whether its restart plan approval has a significant environmental impact, concluding that it did not because the Santa Ynez Pipeline

11

System will be operated in accordance with established pipeline safety standards or pursuant to exceptions that have no independent environmental impact. Ex. 4: 10-11.

Because PHMSA has now completed a NEPA review, Environmental Petitioners' claim seeking such a review is moot. A claim becomes moot when a party receives the relief it seeks. *See Carter v. Veterans Admin.,* 780 F.2d 1479, 1481 (9th Cir. 1986). In *Carter* plaintiff sought injunctive relief to direct a government agency to provide documents requested under the Freedom of Information Act, and the claim was rendered moot when the agency voluntarily provided the documents. *Id.* A case becomes moot where an issue is no longer "live," and litigants lack a legally cognizable interest in the outcome of the case. *Already, LLC*, 568 U.S. at 91. Environmental Petitioners fault PHMSA for not undertaking NEPA review of its restart plan approval. Now that PHMSA has completed its NEPA review, Petitioners have received their requested relief. This claim is no longer live.

Nor is there any effective relief the Court could award at this point. *See Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021) (recognizing that a case is moot where the court could not give any relief to Plaintiffs). Ordering PHMSA to complete a NEPA analysis would be pointless, as PHMSA has now done exactly that.

12

The voluntary cessation exception to mootness does not apply to the NEPA argument. "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued" and such a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Pierce v. Ducey*, 965 F.3d 1085, 1090 (9th Cir. 2020) (quoting *Already, LLC*, 568 U.S. at 91 (2013)) (internal quotation marks omitted). That analysis applies when a defendant *ceases* to engage in allegedly improper conduct. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189-190 (2000) (to establish mootness, a defendant who voluntarily ceases the challenged conduct must show that the conduct "could not reasonably be expected to *recur*" or "start up *again*" (emphasis added)). Petitioners do not argue that PHMSA has enforced any unlawful policy, and PHMSA has not ceased an allegedly unlawful action. Instead, Petitioners seek to compel government action, an action which the government has taken. The voluntary cessation exception is inapplicable.

Nor is this a case where PHMSA's failure to prepare a NEPA analysis could recur. PHMSA has conducted a NEPA analysis of its restart plan approval and that action cannot be undone. When asserting that a claim is moot based on a change in government behavior, the government must show that the change is "entrenched" or "permanent." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir.

13

2015) (cleaned up). Here, PHMSA undertook the requested analysis and that analysis is now complete. To the extent Petitioners believe they are harmed and that PHMSA's action is legally insufficient, it can be challenged in a subsequent case.

## II. The mootness exception for conduct that is capable of repetition yet evading review does not apply.

The exception to the mootness doctrine for conduct "capable of repetition yet evading review" does not apply. The "capable of repetition yet evading review" exception applies only in "extraordinary cases." *Doe v. Madison Sch. Dist. No. 321,* 177 F.3d 789, 798 (9th Cir. 1999) (*en banc*) (cleaned up). That exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Election Commission v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks and citation omitted).

A controversy evades review only if it is "inherently limited in duration such that it is likely always to become moot before federal court litigation is completed." *Ctr. for Biological Diversity v. Lohn,* 511 F.3d 960, 965 (9th Cir. 2007) (cleaned up). In *Northwest Resource Info. Ctr., Inc. v. National Marine Fisheries Service*, the Ninth Circuit held that a one-year permit followed by a five-year permit did not satisfy the mootness exception because five years was "more

14

than adequate time to obtain judicial review." 56 F.3d 1060, 1070 (9th Cir. 1995).

Here, as we argued in our answering brief, there is no reasonable expectation that

the United States' assertion of jurisdiction will evade review. U.S. Br. 43-44.

Petitioners have an opportunity to challenge the special permit and its

accompanying NEPA analysis and jurisdictional determination, and that permit is

in place for 10 years. Special Permit Condition 25(a); Ex. 5: 15.

**III.    Dismissing as moot is the most effective way to resolve the key disputed issue of jurisdiction.**

The core issue in this case is the question of PHMSA's exclusive

jurisdiction. This core issue should be decided in the context of a challenge to the

new determination. PHMSA has conducted additional factual analysis and has

provided additional explanation, supported by a new record. As discussed above,

*supra* § I.B., Petitioners' prior challenges are moot. And the new determination

contains a thorough discussion of the legal background and legal justification for

jurisdiction here, which will assist the court in resolving an issue of substantial

importance.

This jurisdictional issue has broader impacts on pipelines across the country.

And under Petitioners' view, PHMSA's jurisdiction is extraordinarily narrow.

Petitioners claim that (1) midstream processing activities are outside the scope of

the statute, and that (2) if a facility does any activity that's outside the scope of the

statute, it automatically terminates the flow of interstate commerce. Cal.Br. 30;

15

Envtl. Reply 7, 13.  These views are both wrong, as PHMSA's superseding

jurisdictional determination explains, and would cause serious impediments to

PHMSA's efforts to ensure the safety of the nation's pipelines.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal as moot.

Respectfully submitted,

/s/ *Matthew R. Oakes*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
Of Counsel:                                      ROBERT N. STANDER
                                                 *Deputy Assistant Attorney General*
GREGORY ZERZAN                                   REBECCA JAFFE
*General Counsel*                                MATTHEW R. OAKES
U.S. Dept. of Transportation                     *Attorneys*
                                                 Environment and Natural Resources Division
KEITH COYLE                                      U.S. Department of Justice
*Chief Counsel*                                  Post Office Box 7415
BENJAMIN FRED                                    Washington, D.C. 20044
*Assistant Chief Counsel*                        (202) 598-0402
TIMOTHY O'SHEA                                   matthew.oakes@usdoj.gov
KATHLEEN MAITLAND
*Attorneys*
Pipeline and Hazardous Materials Safety
Administration

June 26, 2026
DJ# 90-13-1-18706

16

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27-1(1)(d) because, excluding the parts of the document exempted by Rules 27(a)(2)(B) and 32(f), this document contains 3,406 words. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

s/ *Matthew R. Oakes*
MATTHEW R. OAKES

Counsel for Appellants

1a