No. 25-8059, 26-508
Argument Scheduled: July 7, 2026

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF CALIFORNIA,

*Petitioner*,

V.

PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, ET AL.,

*Respondents*.

## OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO DISMISS AS MOOT

ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
DEBORAH M. SMITH
  *Senior Assistant Attorneys General*
MYUNG J. PARK
VANESSA C. MORRISON
  *Supervising Deputy Attorneys General*

MATTHEW BULLOCK
MICHAEL S. DORSI
MITCHELL RISHE
RAFAEL J. HURTADO
REBECCA HUNTER
  *Deputy Attorneys General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3802
Fax: (415) 703-1107
Michael.Dorsi@doj.ca.gov
Mitchell.Rishe@doj.ca.gov
  *Attorneys for Petitioner*

July 2, 2026

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................... 1

Background ................................................................................... 3

    I.     Collateral District Court Proceedings ...................................... 3

    II.    Procedural History in This Court ............................................. 4

Standard of Review ........................................................................ 6

Argument....................................................................................... 7

    I.     The Federalization Order is Not Moot .................................... 7

          A.    The Federalization Order Has Continuing Legal Effect ................................................................................ 7

          B.    The Jurisdictional Determination in Support of Special Permit Does Not Replace or Supersede the Federalization Order ..................................................... 10

    II.    The Restart Order is Not Moot................................................ 13

    III.   A Ruling in California's Favor by This Court Would Have Collateral Legal Consequences in the District Court, Which Defeats Mootness ........................................................ 15

Conclusion .................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page**

CASES

*350 Montana v. Haaland*
  50 F.4th 1254 (9th Cir. 2022) ...................................................................6, 9

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v.
California Dep't of Transp.*
  713 F.3d 1187 (9th Cir. 2013) .....................................................................12

*Bell v. City of Boise*
  709 F.3d 890 (9th Cir. 2013) .......................................................................11

*City of Mesquite v. Aladdin's Castle, Inc.*
  455 U.S. 283 (1982).....................................................................................11

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
  591 U.S. 1 (2020).........................................................................................15

*E.E.O.C. v. Fed. Exp. Corp.*
  558 F.3d 842 (9th Cir. 2009) ..................................................................6, 15

*Grand Canyon Tr. v. U.S. Bureau of Reclamation*
  691 F.3d 1008 (9th Cir. 2012) .......................................................................8

*Idaho Department of Fish & Game v. National Marine Fisheries
Service*
  56 F.3d 1071 (9th Cir. 1995) .........................................................................8

*Kescoli v. Babbit*
  101 F.3d 1304 (9th Cir. 1996) .......................................................................9

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*
  606 U.S. 146 (2025)..................................................................................4, 16

*National Audubon Society v. Butler*
  160 F. Supp. 2d 1180 (W.D. Wash. 2001) ....................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Native Vill. of Point Hope v. Salazar*
  680 F.3d 1123 (9th Cir. 2012) ...........................................................................8

*Rosemere Neighborhood Ass'n v. EPA*
  581 F.3d 1169 (9th Cir. 2009) ...........................................................................6

*Southern Pacific Pipe Lines Inc. v. U.S. Dep't of Transp.*
  796 F.2d 539 (D.C. Cir. 1986) .........................................................................11

*Theodore Roosevelt Conservation Partnership v. Salazar*
  661 F.3d 66 (D.C. Cir. 2011) .............................................................................9

**STATUTES**

49 U.S.C.
  § 60105.................................................................................................................11
  § 60119...................................................................................................................3

iii

## INTRODUCTION

Just eleven days before oral argument in this matter, PHMSA has moved to dismiss California's petition on mootness grounds. Case No. 26-508, Dkt. 99. The eleventh-hour motion claims that all three challenged actions—the December 17, 2025, order purporting to redesignate Sable-owned pipelines CA-324/325 as "interstate" (Federalization Order), the December 22 order approving Sable's restart plan (Restart Approval), and the December 23 permit granting Sable a temporary bypass of certain restart requirements (Emergency Special Permit)—have been superseded by a new Special Permit, issued on June 25, 2026, that sets the conditions for Sable's operation of Lines CA-324/325 for the next 10 years (unless modified by PHMSA or abandoned by Sable).

PHMSA has failed to clear its high burden of establishing that California's challenges to the Federalization Order and Restart Approval are moot.[1] PHMSA cannot meet this high burden because PHMSA continues to act based on the same underlying assertion of federal jurisdiction—its claim that Lines CA-324/325 are *inter*state pipelines—including by issuing a new jurisdictional determination that reaches the same conclusion, rehashes similar flawed justifications, and relies on the same evidentiary record as its prior action. The Special Permit, and the

---

[1] California defers to the position of the Environmental Petitioners as to whether the challenge to the Emergency Special Permit is moot.

1

jurisdictional determination that supports it, continues the same deprivation of California's sovereign power as its December 17 Federalization Order and it harms California in the same way by usurping state regulation of an *intra*state pipeline. And California continues to be harmed by the Federalization Order's collateral effects on pending district court cases in the Central District of California.

The Special Permit does not displace either the Federalization Order or the Restart Approval. Although PHMSA offers a new "jurisdictional determination" in support of the Special Permit, it does not disavow or otherwise renounce the Federalization Order; simply repeating a legal mistake does not render moot a challenge to the first legal mistake. And there is no new order authorizing a pipeline restart; Sable still relies on the December 22 Restart Approval. Moreover, both the federal government and Sable have relied on the continuing validity of the Federalization Order and the legal effect of the Restart Approval in pending federal district court proceedings. Specifically, the federal government has asserted that the Restart Approval is a predicate to the termination of a federal consent decree— an order vacating the Restart Approval would remove what the federal government argues is a necessary precondition to termination of the Consent Decree.

The motion should be denied.

2

## BACKGROUND

This case arises from the efforts to restart the Lines CA-324/325, also known as the Las Flores Pipeline. The pipeline had been offline since the 2015 Refugio Oil Spill in Santa Barbara County. After the oil spill, the federal government, California state agencies including its State Fire Marshal, the University of California, and pipeline owner Plains All-American Pipeline entered into a Consent Decree in the U.S. District Court for the Central District of California, *United States, et al. v. Plains All-American Pipeline, et al.*, case no. 2:20-cv-02415-SVW-SS (*Plains*). The Consent Decree memorializes the intrastate status of Lines CA-324/325 and requires that the pipeline operator obtain State Fire Marshal approval to restart pipeline operations.

## I. COLLATERAL DISTRICT COURT PROCEEDINGS

Although this case is filed directly in the Court of Appeals, *see* 49 U.S.C. § 60119, there are collateral issues raised in the district courts. In *Plains*, a separate but related case, California, the federal government, and Sable are litigating the Consent Decree in post-judgment proceedings. California has moved to enforce the Consent Decree, and the federal government and Sable have moved to terminate or modify the Consent Decree. Relevant to this motion, the federal government argued to the District Court that: (1) the December 2025 PHMSA orders, including the Restart Approval, form a basis to terminate or modify the Consent Decree,

3

*Plains*, ECF 49 at 14, 18-19, and (2) whether the PHMSA orders are contrary to law can only be addressed by a petition for review in a federal Court of Appeals (in other words, in this action), not a collateral attack in the district court, *Plains*, ECF 60 at 24.[2] California disagreed.[3] Those motions are under submission after court-ordered supplemental briefing. If the District Court agrees with the federal government's position in *Plains*, California's only opportunity to challenge the Restart Approval is in this case.

## II.  PROCEDURAL HISTORY IN THIS COURT

The Environmental Petitioners filed their petition for review with this Court on December 24, 2025, and sought a stay of the December 22 and 23 orders.[4] Case No. 25-8059, Dkt. 1, 8 (EDC Dkt.). This Court denied emergency relief but set an expedited schedule. EDC Dkt. 21. California and its State Fire Marshal filed suit

---

[2] The federal government's framing in the District Court refers to PHMSA's orders in the plural, meaning they are referring to at least two of the December orders. If they only mean to refer to two of the three, they have not informed the District Court which two orders they refer to.

[3] California cited *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) for the proposition that it can challenge the Restart Approval either by direct review in a Court of Appeals or when it is asserted by another party in an enforcement proceeding. *Plains*, ECF 55 at 27, 62 at 11-13. However, once this Court makes a ruling on the Restart Approval, that will bind the District Court both through preclusion and vertical *stare decisis*. *McLaughlin*, 606 U.S. at 155 n.3.

[4] At that time, the Environmental Petitioners did not assert that PHMSA lacked jurisdiction over Lines CA-324/325, as California does in its petition.

on January 23, and this Court consolidated the cases on February 5. Case No. 26-508, Dkt. 1, 11 (California Dkt.).

PHMSA certified the administrative record for the Environmental Petitioners' case on January 13, 2026, EDC Dkt. 25, and on March 5 filed its amended certification in California's case identifying the same record. California Dkt. 18. All Petitioners timely filed their opening briefs on March 23, 2026. California Dkt. 23; EDC Dkt. 53.

A week before the May 8 due date for PHSA's answering brief, PHMSA requested an extension of time for its brief because it had located "more than 2500" additional pages of record documents. California Dkt. 45 at 1. The Court granted PHMSA a 3-day extension, California Dkt. 48, and on May 9, PHMSA filed its second revised certified index, California Dkt. 49. The index identified 104 additional documents, consisting of 5,620 additional pages (not 2,500), more than quadrupling the size of the original record. *Id.* Due to redactions, California and the Environmental Petitioners did not gain access to all of these documents until May 27.

On May 26, this Court issued an order compelling PHMSA to conduct an additional search and provide additional record documents. PHMSA did so, producing 1132 pages of additional documents to Petitioners on June 10—the day before their deadline to file reply briefs. It still remains unclear if PHMSA

5

completed its disclosures; for example, CalFER-2 is a December 8, 2025, email from Dustin Hubbard, PHMSA's Director of Office of Pipeline Safety-Western Region, to Lance Yearwood, Vice President of Sable, asking Mr. Yearwood "what happens" at the Las Flores Canyon Facility. But no document in the record responds to this question.

On Friday, June 26, counsel for PHMSA informed petitioners' counsel that PHMSA had issued a new Special Permit and would be moving to dismiss the case as moot. PHMSA filed its motion to dismiss the same day.

## STANDARD OF REVIEW

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings. The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted. An action becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *350 Montana v. Haaland*, 50 F.4th 1254, 1263-64 (9th Cir. 2022) (internal citations and quotations omitted). The potential effectual relief sufficient to defeat mootness can be either a direct result of resolving the case at issue or establishing collateral legal consequences. *See E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2009). The Party asserting mootness bears a "heavy burden." *Rosemere Neighborhood Ass'n v. EPA*,

6

581 F.3d 1169, 1173–1175 (9th Cir. 2009) (citation omitted). For the reasons set forth herein, PHMSA has not met its burden.

**ARGUMENT**

I.     THE FEDERALIZATION ORDER IS NOT MOOT

    A.     **The Federalization Order Has Continuing Legal Effect**

Nothing in PHMSA's newest orders supersedes or alters the December Federalization Order. That Order made a finding that Lines CA-324/325 are "interstate" for purposes of the Pipeline Safety Act, and asserted federal jurisdiction that (if valid) has the effect of displacing California regulatory authority over pipeline safety. *See* California Dkt. 1 at 7-9 (Federalization Order). California's petition challenges the lawfulness of that Order under the Administrative Procedure Act. California Dkt. 1 at 4. PHMSA has not withdrawn that determination. And if the determination were overturned, all of PHMSA's subsequent actions—including its most recent Special Permit—would be invalid.

PHMSA argues that the Jurisdictional Determination issued in support of the Special Permit supersedes the Federalization Order. But PHMSA has not conceded that the new Jurisdictional Determination is a reviewable final agency action.[5]

---

[5] More, the federal government has not disavowed a potential statute of limitations challenge. Specifically, PHMSA issued the Federalization Order on December 17, 2025, and the statute of limitations for California to challenge that decision under the APA lapsed 89 days later, on March 16, 2026. Neither the federal government nor Sable has provided any assurances that, if this case is

(continued…)

7

Further, PHMSA's authorities for mootness are not analogous. *See* Motion at 10-11. *Native Vill. of Point Hope v. Salazar*, 680 F.3d 1123, 1131 (9th Cir. 2012) is distinguishable, as that case involved an agency's revision of a biological opinion to comply with information requirements in regulations. *Salazar* did not involve an agency without jurisdiction reiterating a new, and similarly flawed, jurisdictional conclusion. *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1017 (9th Cir. 2012), is similarly inapposite. There, the court held that a biological opinion supersedes a prior biological opinion. Notably distinct, the parties in *Grand Canyon* did not contest mootness, as they do here, and the court's opinion did not describe whether the biological opinions were the same or different.

PHMSA's reliance on *Idaho Department of Fish & Game v. National Marine Fisheries Service*, 56 F.3d 1071, 1074 (9th Cir. 1995) is also misplaced. There, the agency action was a reversal of its prior decision. Distinctly, PHMSA's Jurisdictional Determination merely builds on the reasoning of the Federalization Order challenged here. The fact that PHMSA's analysis is not identical in the second document makes no difference. In *National Audubon Society v. Butler*, 160 F. Supp. 2d 1180, 1187 (W.D. Wash. 2001), the District Court distinguished a case

---

dismissed, they would not respond to a subsequent challenge by asserting that such a challenge is time-barred.

8

where the old and new environmental assessment said the same thing. That District Court relied on this Court's decision in *Kescoli v. Babbit*, 101 F.3d 1304, 1309 (9th Cir. 1996), which held that when the same conditions are carried through from one action to another, the challenge to the first action does not become moot. There, the appeal of mining permit did not become moot where an offensive permit condition was included in subsequent permit without material modification. *Kescoli*, 101 F.3d at 1309. Here, the federal government carries the same assertion of federal jurisdiction from the Federalization Order through the Jurisdictional Determination, arriving at the same conclusion based on substantially similar grounds.

Finally, *Theodore Roosevelt Conservation Partnership v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011), is inapposite. This Court distinguished that case in *350 Montana v. Haaland*, 50 F.4th 1254, which considered whether a challenge to the government's environmental assessment for a mine expansion project became moot once the government published a new environmental assessment pending appeal that reached the same result. There, the Court held that when relevant portions of a prior action are incorporated into the later document, the later document does not render a challenge to the prior document moot. *Id.* at 1264.

**B.    The Jurisdictional Determination in Support of Special Permit Does Not Replace or Supersede the Federalization Order**

Although PHMSA argues that the Jurisdictional Determination "supersed[es]" the Federalization Order, Motion at 5, the Jurisdictional Determination on its face does no such thing. The Jurisdictional Determination does not purport to be a separate and independent order or action by PHMSA, but instead constitutes a legal analysis "in support of" the Special Permit. This is fundamentally different than the Federalization Order, which was issued on December 17, 2025, a week before the Emergency Special Permit issued on December 23, and even before the December 19, 2025 "requested date" of the Emergency Special Permit.

At most, the Jurisdictional Determination merely offers a more lengthy legal analysis in support of the original Federalization Order. Neither the Jurisdictional Determination itself nor PHMSA's motion identifies any new material *evidence* in support of exclusive federal jurisdiction. Rather, these documents appear to indicate that PHMSA is relying on the same inspections and other record evidence that supported the December 17 Federalization Order. PHMSA had every opportunity to make these same arguments in its Answering Brief (or in its original Federalization Order).[6] Its choice not to do so should not deprive this Court of

---

[6] Notably, PHMSA makes a new allegation that the Pipeline Safety Act categorizes all pipelines "affecting" interstate commerce as *inter*state pipelines, subject to PHMSA jurisdiction. Under this interpretation, the reach of exclusive

(continued…)

jurisdiction to determine whether, under the facts and the law, Lines CA-324/325 are interstate pipelines.

Even if the Federalization Order were superseded by the jurisdictional determination, an exception to mootness would apply. Under the voluntary cessation exception, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "The 'heavy burden' lies with the party asserting mootness to demonstrate that, after a voluntary cessation, 'the challenged conduct cannot reasonably be expected to start up again.'" *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000)).

As this Court has made clear, the voluntary cessation doctrine applies where a challenged policy has been replaced by a policy that is substantially similar to the

---

federal jurisdiction under the PSA is the full extent of the commerce power under the U.S. Constitution. Such an interpretation would render *intra*state crude oil pipelines non-existent, contrary to Congressional intent. The PSA clearly contemplates the existence of intrastate pipelines, 49 U.S.C. § 60105, and the D.C. Circuit rejected an interpretation that would eliminate intrastate pipelines precisely because of that result. *See, e.g.*, *Southern Pacific Pipe Lines Inc. v. U.S. Dep't of Transp.*, 796 F.2d 539, 542 (D.C. Cir. 1986) (quoting 50 Fed.Reg. 39,011 (1985)) ("the adoption of the Southern Pacific approach could result in the virtual exclusion of the states from the area of hazardous liquid pipeline regulation. This result was not intended by Congress[,] which has always recognized a major role for the states in pipeline safety").

original policy. *See Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) ("there was not merely a *risk* that the government would repeat the challenged conduct, it had already done so by instituting a substantially similar" policy (emphasis in original)). That is precisely the case here. There is no material difference between PHMSA's assertion that Lines CA-324/325 are interstate pipelines in the December 17 Federalization Order and the same conclusion offered with the June 25 Special Permit. While PHMSA notes that the Special Permit contains a "Jurisdictional Determination," the Determination reaches the same conclusion as the December 17 Federalization Order, it appears to be based on the same evidentiary record and is wrong for the same reasons.

Similarly, in *Associated General Contractors of America v. California Department of Transportation*, 713 F.3d 1187, 1194 (9th Cir. 2013), a plaintiff challenged as unconstitutional a state agency affirmative action program that provided race and gender-based preferences on transportation contracts. In a letter filed shortly before oral argument on appeal, the agency insisted that many issues raised in the appeal were moot because it had enacted a new affirmative action program.[7] This Court rejected the agency's assertion of mootness. As this Court

---

[7] Even more, the agency's new affirmative action program was supported by a new "disparity study," *id.* at 1193; whereas here, the "Jurisdictional

(continued…)

reasoned, the new program was *substantially similar* to the prior program and was alleged to disadvantage the plaintiff's members in the same way. As a result, the Court found that there was *more* than a risk the government would repeat the challenged conduct; it had already done so by instituting a substantially similar preference program. That reasoning applies here with equal force.

## II. THE RESTART ORDER IS NOT MOOT

When PHMSA issued orders in December 2025, the Federalization Order was not enough to fully displace California's Office of State Fire Marshal's authority (OSFM). In addition to regulation by the California State Fire Marshal under the California Elder Pipeline Safety Act, the pipelines were then—and remain today— subject to a federal consent decree entered in the U.S. District Court for the Central District of California (Consent Decree). And that Consent Decree imposes a requirement that the owner and operator of Lines CA-324/325 obtain a restart approval from the California State Fire Marshal. In an effort to circumvent this, PHMSA issued a second order on December 22, 2025, approving Sable's restart plan (the Restart Approval). Although the Consent Decree says that this responsibility rests with the Fire Marshal, PHMSA alleged then—and continues to allege now, including in motions under submission at the District Court—that

_____

Determination" is supported by the same evidentiary record as the original Federalization Order.

13

because of its own conclusion that CA-324/325 are *inter*state, PHMSA, rather than the Fire Marshal, had the power to issue the Restart Approval.

PHMSA does not claim that any other order has superseded the Restart Approval. Instead, it makes a perfunctory assertion of mootness as to California's challenge, arguing that since the separate Jurisdictional Determination order has been superseded, any jurisdiction-based challenges to the Restart Approval are likewise superseded. Motion at 11. That is incorrect.

PHMSA's position boils down to a statement that the Restart Approval is now supported by PHMSA's new Jurisdictional Determination. But PHMSA's new Jurisdictional Determination did not exist at the time of the Restart Approval. And California's challenge is to the Restart Approval itself because that is the only document, then or now, that could have authorized a restart on December 22. The fact that California's *basis* for challenging the Restart Approval is that PHMSA lacked jurisdiction, and that PHMSA has since sought to shore up its assertion of jurisdiction in the Jurisdictional Determination on June 25, is of no moment; because California's dispute with the Restart Approval remains live, its challenge is not moot. At most, the Jurisdictional Determination would be a "post-hoc rationalization" of the jurisdictional component of the Restart Approval, and a post-hoc rationalization is not a lawful basis for agency action; an agency's action must be justified by the record and reasoning before the agency at the time the

14

decision was made. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020).

### III.  A RULING IN CALIFORNIA'S FAVOR BY THIS COURT WOULD HAVE COLLATERAL LEGAL CONSEQUENCES IN THE DISTRICT COURT, WHICH DEFEATS MOOTNESS

A party may defeat mootness by demonstrating that the court's action would have, or protect against, collateral legal consequences. *See E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2009). Here, this is not the only case concerning Sable's restart of oil through Lines CA-324/325. The Consent Decree entered by the court in *United States, et al. v. Plains All-American Pipeline, et al.*, 2:20-cv-02415-SVW-SSCx, governs the restart of Lines CA-324/325. In that case, the federal government and Sable have relied upon the Federalization Order and the Restart Approval as a basis for their requests to terminate or modify the Consent Decree. *Plains*, ECF 49 at 15 (U.S.), ECF 53 at 13-14, 16 (Sable). If this Court vacates the Federalization Order and the Restart Approval, it will spare California from the collateral consequences of those orders that the federal government and Sable are asserting the orders have.

Here, an examination of the federal government's positions on reviewability is instructive. As to the Federalization Order, the federal government argued, in the District Court, that the Federalization Order can only be challenged by direct review in the Court of Appeals. *Plains*, ECF 60 at 24. If that position is correct,

dismissal of this case may leave California with no forum to challenge the Federalization Order.

The federal government's positions on review of the Restart Approval are similarly instructive. In the District Court, the federal government groups the Restart Approval together with the Federalization Order and the Emergency Special Permit, contending that the only forum for review is a direct challenge in a Court of Appeals. *Plains*, ECF 60 at 24. But in this case, PHMSA contends that the Restart Approval can only be challenged in the Consent Decree case. California Dkt. 50 (PHMSA Answering Br.) at 57. This Court should not countenance the federal government taking contradictory positions on reviewability in two related cases concerning the same agency order. Instead, this Court should allow review in this case.

To be clear, California contends that the federal government is wrong on reviewability. *See* n.3, *supra* (discussing *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)). But the positions of the federal government should suffice to determine potential legal consequences.[8] If this Court were to accept the federal government's mootness argument and the District Court were to accept its argument concerning limited reviewability, California would be

---

[8] Conversely, if California prevails here and this Court vacates the Restart Approval, then California would necessarily prevail in its opposition to the federal government's arguments in the District Court that rely on the Restart Approval.

16

afforded *no* forum to raise its challenge to the Federalization Order, and the order would have conclusive effects on the continuing validity of the Consent Decree. This Court should reject the federal government's inconsistent positions and afford California opportunities to challenge the Federalization Order as contrary to law.

## CONCLUSION

PHMSA's motion should be denied.

Dated: July 2, 2026

Respectfully submitted,

/s/ Michael Dorsi

MICHAEL DORSI
  *Deputy Attorney General*
ROB BONTA
  *Attorney General of California*
ANNADEL A. ALMENDRAS
  *Senior Assistant Attorney General*
DEBORAH M. SMITH
  *Acting Senior Assistant Attorney General*
MYUNG J. PARK
VANESSA C. MORRISON
  *Supervising Deputy Attorneys General*
MATTHEW BULLOCK
MITCHELL RISHE
RAFAEL J. HURTADO
REBECCA HUNTER
  *Deputy Attorneys General*

17

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27-1(1)(d) because, excluding the parts of the document exempted by Rules 27(a)(2)(B) and 32(f), this document contains 3,807 words. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

**Signature** _/s/ Michael Dorsi_     **Date** _July 2, 2026_

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**   25-8059, 26-508

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[   ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[   ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO DISMISS AS MOOT

**Signature**  */s/ Michael Dorsi*          **Date**  July 2, 2026

SA2026300092 SF2026400039