Nos. 25-8059, 26-508

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents*,

and

SABLE OFFSHORE CORP., et al.,
*Intervenors*.

On Petition for Review of Decisions Issued by the
Pipeline & Hazardous Materials Safety Administration

**PETITIONERS' OPPOSITION TO FEDERAL RESPONDENTS'
MOTION TO DISMISS**

Linda Krop
Jeremy M. Frankel
Margaret M. Hall

Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
Tel: (805) 963-1622
lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
mhall@environmentaldefensecenter.org

*Attorneys for Petitioners Environmental
Defense Center, Get Oil Out!, Santa
Barbara County Action Network, Sierra
Club, and Santa Barbara Channelkeeper*

Julie Teel Simmonds
David Pettit
Talia Nimmer

Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
Tel: (510) 844-7100
jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

*Attorneys for Petitioners
Center for Biological Diversity
and Wishtoyo Foundation*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................................3

LEGAL STANDARD.............................................................................................5

ARGUMENT .........................................................................................................6

    I.      Petitioners Challenges to the Restart Plan Are Not Moot....................6

          A.      The Court Can Grant Petitioners' Effective Relief on Their Challenge to the Jurisdictional Validity of the Restart Plan. .............................................................................7

          B.      The Court Can Grant Effective Relief on Petitioners' NEPA Claim, as Respondents Have Not Conducted Environmental Review of the Restart Approval.........................8

    II.     Petitioners Challenges to the ESP Are Reviewable. ..........................11

          A.      Under *Kescoli*, Petitioners' Challenge Is Not Moot Because the Same Conditions in the ESP Continue to Govern Operations. ................................................................11

          B.      Effective Relief is Available because Sable May Revert to the ESP if the Special Permit is Stayed or Vacated.............................................................................................13

          C.      Petitioners' Challenges to the ESP Meet an Exception to Mootness: They are Capable of Repetition Yet Evading Review. .........................................................................16

    III.    The Court Can and Should Conclusively Resolve The Matter of Jurisdiction in the Present Posture. ...............................................17

CONCLUSION....................................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

*Big Country Foods v. Board of Education of Anchorage S.D.*,
  868 F.2d 1085 (9th Cir. 1989)....................................................................................6

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ........................................................................ 5, 8, 11, 15

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009)..................................................................................19

*Federal Power Commission v. Moss*,
  424 U.S. 494, 496 (1976) .......................................................................................18

*Greenpeace Action v. Franklin*,
  14 F.3d 1324 (9th Cir. 1992).................................................................................6, 16

*Kentucky Riverkeeper, Inc. v. Rowlette*,
  714 F.3d 402 (6th Cir. 2013)....................................................................................12

*Kescoli v. Babbitt*,
  101 F. 3d 1304 (9th Cir. 1996)........................................................................ 11-13

*Metcalf v. Daley*,
  214 F.3d 1135 (9th Cir. 2000)..................................................................................10

*National Audubon Soc. v. Butler*,
  160 F.Supp.2d 1180 (W.D. Wash. 2001)...............................................................12

*Nw. Env't Def. Ctr. v. Gordon*,
  849 F.2d 1241 (9th Cir. 1988)....................................................................................5

*Solar Energy Industries Association v. Federal Energy Regulatory Commission*,
  80 F.4th 956 (9th Cir. 2023)......................................................................................9

*Southern Pacific Pipe Lines Inc. v. U.S. Dept. of Transp.*,
  796 F.2d 539 (D.C. Cir. 1986) .................................................................................19

*Western Union Tel. Co. v. Federal Communications Commission*,
  541 F.2d 346 (3rd Cir. 1976)......................................................................18

*WildEarth Guardians v. U.S. Dept' of Agriculture*,
  135 F.4th 717 (9th Cir. 2025).......................................................................9

**Statutes**

42 U.S.C. § 4332(2)(C)...........................................................................8, 11

42 U.S.C. § 4336(b)(1).................................................................................9

42 U.S.C. § 4336(b)(2).................................................................................9

49 U.S.C. § 60118(c)(1)(A) .......................................................................13

49 U.S.C. § 60118(c)(2)(A)(ii) ..................................................................13

49 U.S.C. § 60118(c)(2)(B) .......................................................................14

49 U.S.C. § 60104(c) .................................................................................19

49 U.S.C. § 60105(b)(2) ............................................................................19

**Federal Register Notices**

50 Fed. Reg. 39011 (Sept. 26, 1985) ........................................................19

91 Fed. Reg. 8949 (Feb. 24, 2026) .........................................................4, 10

iii

**INTRODUCTION**

On the cusp of oral argument, the Pipeline and Hazardous Materials Safety Administration (PHMSA) issued a suite of new agency actions intended to moot the two Petitions for Review in these consolidated actions. They do not, and this Court should roundly reject Respondents' meritless tactic.

Environmental Defense Center, *et al.*, ("Petitioners") challenge PHMSA's approval of a restart plan (the "Restart Approval") and Emergency Special Permit (ESP). Petitioners claim, *inter alia*, that the agency exceeded its jurisdiction and authority; violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370m-12; and, as to the ESP, violated the Pipeline Safety Act (PSA).

As to the Restart Approval, this Court can still grant effective relief on both Petitioners' claims. The new non-emergency special permit, and PHMSA's determinations in support thereof, do not supersede the approval. Nor do Respondents contend as much. Thus, its validity—including, namely, whether it was an appropriate exercise of PHMSA's jurisdiction and authority—remains a live controversy, and one that can *only* be resolved in the present posture. Further, and despite Respondents' representations, PHMSA has not conducted environmental review of the Restart Approval—the Environmental Assessment it prepared was expressly limited to the ESP and new Special Permit. Thus, the Court can still order the agency to comply with its obligations under NEPA.

1

Petitioners' challenges to the ESP are likewise reviewable for three reasons. First, because the conditions in the new Special Permit are virtually identical to those in the ESP, Petitioners' challenge to those conditions remains live under this Court's precedent. Second, Sable retains the option of reverting to the ESP if the Special Permit is stayed or vacated, and a favorable ruling on Petitioners' claims would prevent Sable from doing so. Third, for similar reasons, Petitioners' challenges to the ESP remain capable of repetition yet evading review.

Lastly, Respondents make an extraordinary ask of this Court: that it avoid ruling on the jurisdictional validity of the Restart Approval and ESP. They would prefer, instead, that the Court consider the issue in the context of the new Special Permit, on a record they believe is more favorable to them, with consideration of their new jurisdictional determination. The Court need not—and cannot—do so.

PHMSA's "new" jurisdictional analysis does not present any new facts not already before the Court; the Court has before it a comprehensive, uncontroverted overview of the facilities at issue that is sufficient to resolve the legal question presented here. That this new analysis may add additional texture to Respondents' legal arguments is irrelevant—Respondents had every opportunity to present their case in their Answering Brief.

In any event, the Court cannot defer ruling on this issue. Petitioners' challenges—including their jurisdictional claims—are not moot, and Petitioners'

have a right to have them resolved. Indeed, should the Court dismiss Petitioners' challenges, the Restart Approval and ESP would become unassailable, despite the fact that Sable's restart remains tethered to the Restart Approval, the conditions of the ESP continue to govern operations, and Sable may yet revert to relying on the ESP. The Court should deny Respondents' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2025, PHMSA purported to wrest jurisdiction of two defective onshore pipelines from the State of California: lines CA-324 and CA-325 (the "Onshore Pipelines"), which had been shut down since causing a catastrophic oil spill in 2015. As discussed at length in Petitioners' Opening Brief, PHMSA's seizure of the pipelines was premised on a novel theory that the Onshore Pipelines are segments of a larger, *inter*state pipeline facility, despite PHMSA formally recognizing in 2016 (and again in 2020) that the Onshore Pipelines are *intra*state facilities and thus under the exclusive jurisdiction of the State.

Within a week, PHMSA took two actions directed at facilitating Intervenors Sable Offshore Corp. and Pacific Pipeline Company's (together, "Sable") effort to restart the defective pipelines: it (1) issued an ESP waiving corrosion-prevention requirements and (2) approved a restart plan for the pipelines that the State had previously rejected (together, the "Approvals").

On December 24, 2025, Petitioners filed a Petition for Review with this

3

Court challenging the Approvals (Case No. 25-8059). They also filed, concurrently, an Emergency Motion to Stay the Approvals pending resolution of their Petition, citing, *inter alia*, the substantial risk of another oil spill from the Onshore Pipelines. On December 31, 2025, the Court denied Petitioners' request for a stay. Dec. 31, 2025, Order (Dkt. 21). However, it ordered that the Petition be expedited with briefing to conclude no later than March 17, 2026. *Id.*

On January 23, 2026, the State filed its own Petition for Review, which challenges the Approvals as well as PHMSA's December 17, 2025, Federalization Order (Case No. 26-508). Shortly thereafter, PHMSA filed an unopposed motion to consolidate Case Nos. 25-8059 and 26-508. The Court granted consolidation, approved the parties' proposed briefing schedule, and ordered that briefing conclude no later than June 8, 2026. Feb. 5, 2026, Order (Dkt. 39), p. 2. The consolidated cases were thereafter set for oral argument on July 7, 2026.

During briefing, the ESP expired, and Sable applied for a non-emergency special permit ("Special Permit"). In this interim, unpermitted period, Sable committed to "abid[ing] by the [ESP] conditions" while awaiting a decision on the Special Permit, which Respondents accepted as an alternative form of compliance with the PSA. *See* 1-PSE-50.

On February 24, 2026, PHMSA noticed the Special Permit for public comment, as required by the PSA. 91 Fed. Reg. 8949 (Feb. 24, 2026). In addition

4

to a draft Special Permit, PHMSA published an Environmental Assessment (EA), which it "developed . . . to assist in analyzing the environmental impacts associated with the ESP issued to Sable on December 23, 2025 and proposed non-emergency SP currently under PHMSA consideration." Mtn., Ex. 3, at 6.

On June 25, 2026, PHMSA issued the Special Permit, which is virtually identical to the ESP. Mtn., Ex. 5; *see infra,* Argument, Part II.A (comparing the ESP and Special Permit). It also issued the following documents in support thereof: an analysis and findings on pipeline safety; a jurisdictional determination; and a Finding of No Significant Impact (FONSI). Mtn., Exs. 1, 2, 4. The FONSI was for the "[i]ssuance of an [ESP] and issuance of a subsequent non-emergency Special Permit," but, in a single paragraph, it purported to also address the previously-issued Restart Approval. Mtn., Ex. 4, at 1, 11.

On June 26, 2026, Respondents brought this motion to dismiss, claiming these actions (the "June 25 Actions") moot all claims in these consolidated cases.

## LEGAL STANDARD

"The burden of demonstrating mootness is a heavy one." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (citations omitted). A claim "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)

5

(citations omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (citation omitted).

Even if a claim is moot, it is nonetheless reviewable if the challenged action is capable of repetition yet evading review. *E.g., Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992). "Government actions fall within this category if (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Id.* (citation omitted).

## ARGUMENT

The June 25 Actions did not moot Petitioners' challenges to either the Restart Approval or ESP, for which the Court can still grant effective relief.

## I.     Petitioners Challenges to the Restart Plan Are Not Moot.

Approval of a restart plan is a prerequisite to restart. 2-PHMSA-SER-7; 1-FER-10–12; 2-ER-310–314. It is the final agency authorization necessary to resume operations, and Sable's restart of the pipelines is tethered to its validity.

The June 25 Actions did not supersede or otherwise obviate the Restart Approval; it was a wholly separate action not subsumed by the Special Permit process. Nor do Respondents contend as much.[1] Instead, they claim Petitioners'

---

[1] And they may not do so first the first time in their reply. *E.g., Big Country Foods v. Board of Education of Anchorage S.D.*, 868 F.2d 1085, 1088 (9th Cir. 1989) (parties cannot raise a new theory for the first time in a reply brief).

6

challenge is moot because PHMSA "finalized [a] new NEPA analysis and found that its approval of Sable's restart plan would have no significant impact"; thus, Respondents say, PHMSA has completed the NEPA review that Petitioners urge was required. Mtn. at 11. The Court should reject Respondents' mootness theory for two glaring reasons: (1) Respondents ignore Petitioners' jurisdictional claim, which remains live, and (2) Respondents have not conducted environmental review for the Restart Approval, despite their contrary representations.

**A.      The Court Can Grant Petitioners' Effective Relief on Their Challenge to the Jurisdictional Validity of the Restart Plan.**

First, Petitioners did not challenge the Restart Approval solely for noncompliance with NEPA, which Respondents ignore. Petitioners' first and primary challenge to the Restart Approval is that it exceeded PHMSA's jurisdiction. Op. Br. at 2. The Court can grant effective relief on that claim notwithstanding the June 25 Actions, and Respondents do not argue otherwise.

Respondents theorize that PHMSA's new jurisdictional determination, which was expressly issued in support of the *Special Permit*, supersedes the *Federalization Order*—i.e., its prior jurisdictional determination.[2] This has no bearing on Petitioners' distinct challenge to the *Restart Approval*—an action that

---

[2] While Environmental Petitioners did not challenge the Federalization Order— only the ESP and Restart Approval—they dispute that the June 25 Actions supersede that order, such that it has no independent effect, for the reasons stated in the State's opposition to this motion.

Respondents do not contend has been superseded. Thus, the jurisdictional validity of the Restart Approval—to which Sable's restart is tethered—remains a live controversy that was not obviated by the June 25 Actions.

To the extent Respondents suggest that PHMSA's new jurisdictional determination prevents the Court from reaching that *justiciable* issue, it offers no authority for that proposition, and Petitioners are aware of none.

In short, PHMSA's actions in support of the Special Permit do not moot Petitioners' claim that *this* action—the Restart Approval—was in excess of PHMSA's jurisdiction. The Court must resolve that issue, which Respondents had every opportunity to address in their Answering Brief. And if resolved in Petitioners' favor, the necessary result would be vacatur of the Restart Approval, the loss of entitlement to operate the Onshore Pipelines, and the return to the State of regulatory oversight—all of which would provide "effectual relief" to Petitioners. *Chafin*, 568 U.S. at 172.

> **B.  The Court Can Grant Effective Relief on Petitioners' NEPA Claim, as Respondents Have Not Conducted Environmental Review of the Restart Approval.**

Second, and contrary to Respondents' representations, *PHMSA did not conduct environmental review of the Restart Approval*.

An agency's basic obligations under NEPA are straightforward: for any "major Federal action," 42 U.S.C. § 4332(2)(C), the agency *must* prepare either an

8

EA or an Environmental Impact Statement (EIS), *id.* § 4336(b)(1), (2). Which environmental document is required—an EA or EIS—turns on whether the action "has a reasonably foreseeable effect on the quality of the human environment." *Id.* § 4336(b)(1), (2). But it must prepare one or the other. *See Solar Energy Industries Association v. Federal Energy Regulatory Commission*, 80 F.4th 956, 993-94 (9th Cir. 2023) (collecting cases and reaffirming that, unless an action is categorically excluded, an agency must prepare either an EA or EIS).

If, *after* preparing an EA, an agency determines its action will not cause significant impacts, it may issue a FONSI. 42 U.S.C. § 4336(b)(2). But it cannot skip to the FONSI and eschew preparing an EA—*that is where environmental review occurs.* In other words, by foregoing an EA, an agency fails to conduct environmental review at all. Hence, just as an agency cannot issue a FONSI based on an inadequate EA, *see, e.g., WildEarth Guardians v. U.S. Dept' of Agriculture*, 135 F.4th 717, 739 (9th Cir. 2025), it cannot issue a FONSI where there is no EA for the action at all, *see Solar Energy*, 80 F.4th at 993-94.

And that is precisely what has occurred here: without first preparing an EA for the Restart Approval, PHMSA purported to issue a FONSI for it—or, more accurately, it shoehorned the Restart Approval into its FONSI for the Special Permit (via a single paragraph). Thus, the Restart Approval has, quite simply, not undergone environmental review.

9

Indeed, the EA that PHMSA prepared was *expressly limited* to the ESP and the Special Permit. It states, under the heading "Project Description," the following: "PHMSA developed this EA to assist in analyzing the environmental impacts associated with the ESP issued to Sable on December 23, 2025 and proposed non-emergency SP currently under PHMSA consideration." Mtn., Ex. 3, at 6. Nowhere in the EA did PHMSA suggest it was reviewing the impacts associated with the Restart Plan. Nor did PHMSA do so in the public notice it provided, which only solicited public comments on the Special Permit. *See* 91 Fed. Reg. 8949 (Feb. 24, 2026) ("PHMSA is publishing this notice to solicit comments on a request for a special permit submitted by Sable Offshore Corp.").

Respondents might suggest that an EA for the Restart Plan would be similar to the EA it prepared for the Special Permit. Not only would that argument be mistaken, as the scope and impacts of the Restart Approval may not be co-extensive with those of the Special Permit, it is irrelevant to whether Petitioners' claim here is moot. *Cf. Metcalf v. Daley*, 214 F.3d 1135, 1145-46 (9th Cir. 2000) (NEPA challenge for failure to timely prepare an EA was not moot even though agency prepared an EA post-hoc; ordering agency to "begin the NEPA process afresh" because "appellants did not concede that the EA . . . was adequate"). Simply put, Petitioners seek to compel environmental review of the Restart Approval, and such review has not occurred.

In sum, if Petitioners prevail on their claim that the Restart Approval was subject to NEPA—i.e., that it was a "major Federal action," 42 U.S.C. § 4332(2)(C)—this Court could vacate the Restart Approval and direct PHMSA to prepare an appropriate environmental document for the action. That is "effectual relief," and thus Petitioners' NEPA claim is not moot. *Chafin*, 568 U.S. at 172; *see Metcalf*, 214 at 1145-46 (ordering preparation of an EA is effective relief).

## II.    Petitioners Challenges to the ESP Are Reviewable.

Nor have Respondents met their burden to show that Petitioners' challenges to the ESP are moot. First, because the challenged conditions in the ESP are virtually identical to those in the new Special Permit, they continue to present a live controversy, as established by *Kescoli v. Babbitt*, 101 F. 3d 1304, 1309 (9th Cir. 1996). Second, because Sable may revert to the ESP if the Special Permit is invalidated, this Court can still grant Petitioners effective relief by vacating the ESP and holding it unlawful. Plus, even if the current challenge is moot, Petitioners' claims are still reviewable under the capable of repetition exception.

### A.    Under *Kescoli*, Petitioners' Challenge Is Not Moot Because the Same Conditions in the ESP Continue to Govern Operations.

As this Court has held, a case is not moot where, as here, a permit is superseded but "the same condition[s] [are] still in effect and continue[ ] to govern . . . operations." *Kescoli*, 101 F.3d at 1309.

11

In *Kescoli*, a federal agency issued a permit for a coal mining operation that contained eighteen special conditions. *Id.* at 1307. One of those conditions was subsequently modified, and the condition was challenged in federal district court by a tribal stakeholder. *Id.* The district court dismissed the lawsuit for failure to join indispensable parties, and the plaintiff appealed to this Court. *Id.* After briefing concluded on appeal, the permit at issue expired and was superseded by a new permit, which retained the same challenged condition without "materially modify[ing] it." *Id.* at 1308-09. A motion was filed to dismiss the appeal as moot, which the Court addressed as a threshold issue. *Id.* at 1308.

The Court acknowledged that, for all intents and purposes, "the same condition is still in effect and continues to govern [the mining operation]." *Id.* at 1309. Thus, it reasoned, "[t]he same controversy exists after the issuance of the renewal permit," and, for that reason, the appeal was not moot. *Id.; see also Kentucky Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 406 (6th Cir. 2013) (expiration of permits did not render case moot where agency grandfathered in the authorized activities for five years); *National Audubon Soc. v. Butler*, 160 F.Supp.2d 1180, 1187 (W.D. Wash. 2001) (case was not moot where the "alleged improper regulatory framework remains in effect").

Such is the case here: the conditions of the ESP do not materially differ from the Special Permit. *Compare* 1-ER-5–18 (the ESP conditions), *with* Mtn., Ex.

12

5, at 3-14 (the Special Permit conditions). Each permit has twenty-five conditions. Of those conditions, the first twenty-four, which prescribe the waiver's alternative safety measures, are virtually identical. The only one that differs is the twenty-fifth condition, which imposes general limitations on the permits, but is not part of the alternative maintenance program that Petitioners challenge as "inconsistent with pipeline safety."[3]

Accordingly, as in *Kescoli*, although the ESP expired, the conditions challenged by Petitioners still govern operations; thus, the same underlying controversy persists, and Petitioners' claim in this regard is not moot.[4] Effectual relief can still be granted by adjudicating whether the challenged conditions are consistent with pipeline safety.

> **B.  Effective Relief is Available because Sable May Revert to the ESP if the Special Permit is Stayed or Vacated.**

As explained in Petitioners' Reply Brief, Sable retains the option to renew the ESP. *See* 49 U.S.C. § 60118(c)(2)(B). Thus, should the new Special Permit be challenged and vacated, or stayed pending those proceedings, Sable can revert to

---

[3] That condition is inexplicably more lax in the new Special Permit—PHMSA omitted a provision that it could revoke the permit for noncompliance.

[4] In issuing either an ESP or Special Permit, PHMSA must find that the "waiver is not inconsistent with pipeline safety." 49 U.S.C. § 60118(c)(1)(A), (c)(2)(A)(ii). Per PHMSA, this requires that the applicant to show that the proposed waiver conditions "provide an equivalent level of safety as compliance" with the waived requirements. 1-ER-20. Thus, Petitioners' challenge that the ESP is "inconsistent with pipeline safety" is, effectively, a challenge to the *conditions* of the permit.

the ESP by availing itself of the PSA's renewal procedures. By vacating the ESP and holding it unlawful, the Court would prevent Sable from doing so, thereby affording Petitioners effective relief.

Anticipating this argument, Respondents suggest that the ESP will not be renewed for two reasons. Neither are availing.

First, Respondents point out that an ESP can only be issued if "necessary" to address an emergency, *see* 49 U.S.C. § 60118(c)(2)(B), "and no such permit is necessary because the non-emergency special permit is now in place addressing the same issues," Mtn. at 8. This ignores the thrust of Petitioners' contention here: that the Special Permit may be stayed or vacated. In that scenario, Respondents' perceived "necessity" for the ESP would again arise.

Second, Respondents suggest that, if the Special Permit was invalidated, Sable would be *required* to apply for a new permit. Mtn. at 9. But Respondents do not cite any authority for this proposition, which ignores the renewal provision of the PSA. *See* 49 U.S.C. § 60118(c)(2)(B). Instead, they appear to offer a non-binding commitment that "PHMSA would not reissue the old emergency permit." Mtn. at 9. This apparent commitment, non-binding as it is, cannot moot Petitioners' challenge. Absent direction from this Court, nothing prevents PHMSA from renewing the ESP; thus, a favorable ruling would still provide Petitioners effective relief.

Renewal, however, is not the only means by which Sable may attempt to revert to the ESP. During the interim period between the expiration of the ESP and the issuance of the Special Permit, Sable committed to abiding by the expired ESP as an alternative form of compliance with the PSA. *See* Sable Br. at 56; 1-PSE-50; *see also* PHMSA, Notice of Limited Enforcement Discretion and Statement of Policy for Issuing Special Permits in Response to National Energy Emergency (Jan. 12, 2026).[5] If the Special Permit is stayed or vacated, it is reasonably foreseeable that Sable reverts to that posture. By vacating the ESP, the Court would prevent Sable from doing so.

A case is moot "only when it is impossible for a court to grant *any effectual relief whatever* to the prevailing party." *Chafin*, 568 U.S. at 172 (2013) (emphasis added). Respondents have not met their burden to show that is the case here: because the Court can prevent Sable from renewing or otherwise continuing to rely on the ESP, it can grant effective relief. Thus, the validity of the ESP remains a live and justiciable controversy notwithstanding the June 25 Actions, and each of Petitioners' challenges to the propriety of the ESP remain reviewable.

---

[5] Available at https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/2026-01/Notice%20of%20Limited%20Enforcement%20Discretion%20and%20Stateme nt%20of%20Policy%20for%20Issuing%20Special%20Permits%20in%20Respons e%20to%20National%20Energy%20Emergency.pdf.

### C. Petitioners' Challenges to the ESP Meet an Exception to Mootness: They are Capable of Repetition Yet Evading Review.

Even if Petitioners' claims are now moot, they are subject to judicial review because they readily meet one of the exceptions to the mootness doctrine. *See Greenpeace Action*, 14 F.3d at 1339.

As discussed, if the new Special Permit is stayed or vacated, Sable may revert to the ESP. Or, it could apply for a new, identical, ESP. In either case, the same issues presented here regarding the validity of the ESP would recur—i.e., whether it is a proper exercise of PHMSA's jurisdiction and authority under 49 U.S.C. § 60118(c)(2)(A). And, because of the temporary nature of an ESP, these issues could continue to evade review. *See Greenpeace Action*, 14 F.3d at 1339 (suggesting that actions "in effect for less than one year . . . make[] it difficult to obtain effective judicial review"). Indeed, Respondents have all but conceded as much. PHMSA Br. at 43 (stating that the duration of an ESP "make[s] it difficult to challenge . . . prior to its expiration").

That Sable would revert to the ESP, and that PHMSA would permit it do so, is a "reasonable expectation." *Greenpeace Action*, 14 F.3d at 1339. Respondents continue to maintain that a waiver of pipeline safety requirements for the Onshore Pipelines is "necessary" to address its perceived energy emergency. *See* Mtn. at 8. Thus, there is every reason to believe that PHMSA will use all authority at its disposal to permit continued operations of the Onshore Pipelines—as it has been

16

doing since it seized the lines on December 17, 2025. Accordingly, Petitioners claims are capable of repetition yet evading review.

In sum, Petitioners' claims challenging the ESP are not moot—both because its conditions continue to govern operations and because Sable may revert to the ESP. And even if they were moot, Petitioners' claims meet the capable of repetition exception. Thus, Petitioners' claims remain reviewable.

### III. The Court Can and Should Conclusively Resolve The Matter of Jurisdiction in the Present Posture.

Lastly, Respondents urge this Court *not* to resolve the jurisdictional dispute at the core of this matter—i.e., whether the Onshore Pipelines are *inter*state or *intra*state facilities. Instead, citing their new jurisdictional determination, they posit that it should be decided in the context of a different challenge to the Special Permit. Mtn. at 15. In other words, after months of briefing, and on the cusp of oral argument, Respondents want a do-over. There is no reason to indulge this extraordinary request.

*First*, as explained, Petitioners' challenges to the jurisdictional validity of the Restart Approval and ESP are not moot. Thus, Petitioners have the right to have those claims resolved. And indeed, they can *only* be resolved in the matter currently before the Court—how can Petitioners challenge the validity of the *ESP* or *Restart Approval* in a subsequent challenge to the *Special Permit*?

*Second*, the matter of jurisdiction can be conclusively determined on this

record and in the present posture before the Court. Relitigating this same issue on a new record is entirely unnecessary.

Between Respondents' supplementations to the record and the documents this Court has now judicially noticed, *See* Dkt. Nos. 96 and 109, the Court has before it a comprehensive and uncontroverted overview of how the facilities at issue function. *See, e.g.,* 2-PHMSA-SER-146–65 (Sable-submitted slide deck with explanations of facilities); 2-PSE-268–272 (excerpt of air pollution permit with detailed explanation of equipment at the LFC Facilities, their purpose, and how they function); 2-PSE-361–381 (excerpt of development and production plan providing the same); 1-CalPSE-82–152 (Sable's SPCC Plan for the LFC Facilities providing the same). While Respondents claim their new jurisdictional determination provides "additional factual analysis," Mtn. at 15, it is all of four paragraphs, *see* Mtn., Ex. 5, at 6-7, and *it does not add anything not already before the Court*. The facilities are the facilities, and they function how they function; their characteristics are immutable, and nothing Respondents produce in a new record can change them.

Whether PHMSA acted in excess of its jurisdiction is thus purely a question of law. *See, e.g., Federal Power Commission v. Moss*, 424 U.S. 494, 496 (1976) (a jurisdictional challenge is a matter of comparing the claimed excessive action with the pertinent statutory authority); *Western Union Tel. Co. v. Federal*

18

*Communications Commission*, 541 F.2d 346, 354 (3rd Cir. 1976) (applying this principle to a challenge under 5 U.S.C. section 706(2)(C)). And Respondents had every opportunity to present their legal arguments on this issue in their Answering Brief. That Respondents may have added additional texture to these arguments in their new jurisdictional determination, *see* Mtn. at 15, is not cause to evade the issue. It is the opposite. The Court should not reward Respondents' neglect nor indulge Respondents' attempt to circumvent well established rules of appellate practice. *See, e.g., Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (an appellee waives an argument by failing to raise it in their answering brief) (citation omitted).

*Third*, resolution in Petitioners' favor would not jeopardize pipeline safety, as Respondents suggest, Mtn. at 16. To the extent Respondents' concern lies in additional state oversight, it is unfounded. States must enforce the exact same minimum safety standards as PHMSA, and notably, may impose even stricter requirements. *See* 49 U.S.C. §§ 60105(b)(2), 60104(c). And Respondents' concern is irrelevant—who is the appropriate regulator is a matter entrusted to Congress, "which has always recognized a major role for the states in pipeline safety." *Southern Pacific Pipe Lines Inc. v. U.S. Dept. of Transp.*, 796 F.2d 539, 542 (D.C. Cir. 1986) (quoting 50 Fed. Reg. 39,011 (1985)); *see also* Transportation of Hazardous Liquids by Pipeline; Regulation of Intrastate Pipelines, 50 Fed. Reg.

19

39008-02, 39011 (Sept. 26, 1985) (the federal policy is "to allow states to assume as much responsibility for pipeline safety within their states as possible").

*Lastly*, indulging Respondents' request, after months of other improprieties, would work extreme prejudice on Petitioners. According to Respondents, Petitioners should have to file a new lawsuit to have this jurisdictional question resolved and bear all the additional expense and burden that entails. The issue has been fully briefed and has been pending for months. Each day this issue remains unresolved works additional harm on Petitioners. PHMSA continues to assert authority over the Onshore Pipelines; Sable continues to operate under the Approvals; and the Approvals continue to shape ongoing litigation, regulatory oversight, and public safety and environmental risks. Petitioners' claims present live, justiciable controversies that warrant review now.

## CONCLUSION

For the foregoing reasons, the Court should deny Respondents' motion, conclusively resolve the matter of jurisdiction in the present posture, and grant Petitioners' effective relief by vacating the Approvals.

Dated: July 2, 2026

Respectfully submitted,

*s/ Jeremy Frankel*
Linda Krop
Margaret M. Hall
Jeremy M. Frankel

20

ENVIRONMENTAL DEFENSE CENTER
*Counsel for Petitioners Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*


*s/ Talia Nimmer*
Talia Nimmer
Julie Teel Simmonds
David Pettit
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

21