No. 25-8059, consolidated with No. 26-508

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,

v.

PIPELINE & HAZARDOUS MATERIALS SAFETY ADMINISTRATION, et al.,
*Respondents*.

On Petition for Review of Actions by the Pipeline & Hazardous Materials Safety
Administration

## REPLY IN SUPPORT OF FEDERAL RESPONDENTS' MOTION TO DISMISS AS MOOT

Of Counsel:

GREGORY ZERZAN
*General Counsel*
U.S. Dept. of Transportation

KEITH COYLE
*Chief Counsel*
BENJAMIN FRED
*Assistant Chief Counsel*
TIMOTHY O'SHEA
KATHLEEN MAITLAND
*Attorneys*
Pipeline and Hazardous Materials Safety
Administration

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
REBECCA JAFFE
MATTHEW R. OAKES
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
matthew.oakes@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ..........................................................................................1

ARGUMENT ..................................................................................................2

I.     Challenges to the Emergency Special Permit are moot. ...............................2

II.    Challenges to PHMSA's previous interstate determination are moot. ...........................................................................................................6

III.    Challenges to the Restart Plan are moot...........................................9

CONCLUSION ............................................................................................12

CERTIFICATE OF COMPLIANCE................................................................14

i

# TABLE OF AUTHORITIES

## Cases

*350 Montana v. Haaland*,
  50 F.4th 1254 (9th Cir. 2022) ...................................................................8, 9

*Grand Canyon Tr. v. U.S. Bureau of Reclamation*,
  691 F.3d 1008 (9th Cir. 2012) ......................................................................7

*Greenpeace Action v. Franklin*,
  14 F.3d 1324 (9th Cir. 1992) ........................................................................ 4

*Kescoli v. Babbitt*,
  101 F.3d 1304 (9th Cir. 1996) ......................................................................5

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of
  Cleveland* ...................................................................................................10

*Lund v. Cowan*,
  5 F.4th 964 (9th Cir. 2021) ...........................................................................6

*National Audubon Society v. Butler*,
  160 F. Supp. 2d 1180 (W.D. Wash. 2001) ....................................................8

*Native Vill. of Point Hope v. Salazar*,
  680 F.3d 1123 (9th Cir. 2012) ......................................................................7

*Northwest Resource Info. Ctr., Inc. v. National Marine Fisheries
  Service*,
  56 F.3d 1060 (9th Cir. 1995) ........................................................................4

*Tur v. YouTube*,
  562 F.3d. 1212 (9th Cir. 2009) ...................................................................11

*Wallingford v. Bonta*,
  82 F.4th 797 (9th Cir. 2023) .........................................................................4

*WildEarth Guardians v. Haaland*,
  Nos. 22-15029, 22-15091, 2023 WL 8613628 (9th Cir. Dec. 13,
  2023) .............................................................................................................9

**Statutes**

49 U.S.C. § 60118(c)(1)......................................................................................3

49 U.S.C. § 60118(c)(1)(B) ...............................................................................3

49 U.S.C. § 60118(c)(2)......................................................................................3

49 U.S.C. § 60119 .............................................................................2, 9, 10, 12

iii

## INTRODUCTION

Petitioners challenge three agency actions that PHMSA took in December 2025: (1) a jurisdictional determination under the Pipeline Safety Act concluding that the onshore pipeline segments of the Santa Ynez pipeline are used to transport oil in interstate commerce; (2) a 60-day, emergency special permit issued under the Pipeline Safety Act; and (3) an approval of a restart plan under a district court's consent decree. Each of those challenges is now moot or otherwise outside this court's jurisdiction.

First, on June 25, PHMSA issued a new, superseding jurisdictional determination with new reasoning and a new record, and the old determination is no longer in effect. Second, not only did the emergency special permit expire , but PHMSA has now issued a new, 10-year special permit under a new record and under different statutory authority that presents different legal issues. Third, this Court lacks jurisdiction over the restart approval because PHMSA issued it pursuant to the consent decree, and it is not an "order issued under this chapter"— the Pipeline Safety Act—for purposes of the judicial review provision. 49 U.S.C. 60118. Moreover, the NEPA environmental review that petitioners complain about has now been done, and the pipeline has already been restarted, and vacating the restart plan approval would not mean the pipeline must unstart.

1

Alternatively, the Court could hold these petitions to allow California and other petitioners time to challenge the new jurisdictional determination and special permit.  Those challenges are due September 22, 2026.  *See* 49 U.S.C. § 60119(a)(1).  PHMSA's exclusive jurisdiction could then be briefed on the new record with all of PHMSA's reasoning and with the benefit of the Supreme Court's *Flowers Foods* decision, which the Court decided after briefing was complete. The Court could resolve any lingering mootness issues after resolving the merits based on the challenges to the superseding agency actions.

At minimum, and regardless of mootness, the court should allow supplemental briefing on PHMSA's jurisdiction to address the Supreme Court's interstate commerce analysis in *Flowers Foods*, as discussed at oral argument on July 7.

## ARGUMENT

### I.      Challenges to the Emergency Special Permit are moot.

Challenges to the emergency special permit are moot because that permit has expired, no oil flowed while the permit was operative, and PHMSA has issued a new special permit.  MTD 7-9.  PHMSA issued the new special permit under different statutory authority and based on a new administrative record.  That permit

will last for 10 years and so it will not expire before judicial review, if Petitioners elect to challenge it.  Ex. 5.[1]

Importantly, PHMSA applied different statutory authority to issue the non-emergency special permit.  PHMSA issued the new permit under 49 U.S.C. § 60118(c)(1); it issued the expired emergency special permit under Section 60118(c)(2).  This distinction matters because the two statutory provisions have different requirements.  For example, non-emergency special permits require "notice and an opportunity for a hearing."  *Id*. § 60118(c)(1)(B).  Emergency special permits do not require public notice, require "an actual or impending emergency," and require PHMSA to determine the permit is "in the public interest."  *Id*. § 60118(c)(2).  If challenged, the Court will assess the new permit for consistency with this different statutory provision.  There is no reason for the Court to assess whether the expired emergency special permit was or was not consistent with Section 60118(c)(2).

Petitioners also ignore the new record.  Any challenge to the non-emergency special permit would be based on the new record, which includes public comments and PHMSA's responses.  Environmental Petitioners argued here that the emergency special permit terms are inconsistent with pipeline safety.  If they choose to make similar claims challenging the non-emergency special permit, the

---

[1] Exhibit references are to United States' Motion to Dismiss exhibits.  Dkt. 127.

Court will assess PHMSA's new record and reasoning, not the record supporting the emergency special permit.

Challenges to the new special permit will not evade review, as Environmental Petitioners argue. Envtl. Opp. 16-17. *Northwest Resource Info. Ctr., Inc. v. National Marine Fisheries Service,* 56 F.3d 1060, 1070 (9th Cir. 1995), is controlling. US MTD 14-15. In *Northwest,* the challenged permit was valid for less than one year but was followed by a new permit that was valid for five years. *Id.* at 1070. The Court held that "[t]he five-year duration of the current [] permit affords a litigant more than adequate time to obtain judicial review." *Id.* The challenges to the original, expired permit were moot. *Id.* Similarly, here, the expired emergency special permit was valid only for 60 days and the non-emergency special permit is valid for ten years, Ex. 5:15, which is ample time for judicial review. *Wallingford v. Bonta*, 82 F.4th 797, 801 (9th Cir. 2023) ("[A]ctions lasting more than two years are frequently considered long enough to be fully litigated prior to cessation.").

Environmental petitioners rely on *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992), but that case is inapposite. Envtl. Opp. 6, 16-17. *Greenpeace Action* involved challenges to an agency's seasonal fishing allocation, so a challenge to a subsequent, seasonal allocation would face the same time-for-review problem. *Greenpeace Action*, 14 F.3d at 1327-1330. Here, the non-

4

emergency special permit does not have the same limited duration as the emergency special permit.

Environmental Petitioners would have this Court apply *Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996), Envtl. Opp. 11-13, but the facts of that case are distinguishable. The plaintiff there challenged a settlement agreement that modified a condition in a mining permit and allowed mining within 100 feet of a tribal burial site. 101 F.3d at 1307-1308. The permit expired during litigation, and the agency renewed it with the same condition, mandating that the mining company "must continue to adhere to the requirements of the Settlement Agreement." *Id.* at 1308. Here, Petitioners are not challenging an agreement that requires a particular permit term, plus the original permit was not renewed.

Environmental Petitioners argue that emergency special permit conditions continue to "govern operations" because Sable chose to operate under those conditions after the emergency special permit expired, but that is a red herring. Envtl. Opp. 13. For mootness, the key points are that the emergency special permit has expired and there is a new permit. The new non-emergency special permit is now "govern[ing] operations." *Id.* If Petitioners want to challenge the new, non-emergency special permit, they can do so.

It does not matter that, after the emergency special permit expired and before PHMSA issued the non-emergency special permit, Sable chose to continue

complying with the emergency special permit's terms. Sable is now operating under the new, non-emergency special permit.

Environmental Petitioners argue that the non-emergency special permit *might* be stayed, and then the emergency special permit conditions *might* be renewed. Envtl. Opp. 14-15. And Petitioners use the same speculative chain of causation to argue that their challenge is capable of repetition yet evades review. Envtl. Opp. 16-17. But this speculative harm is insufficient to support an actionable claim. *See Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021) ("[S]peculative suppositions, far-fetched fears, or remote possibilities of recurrence cannot overcome mootness."); *see also* MTD 8-9.

## II. Challenges to PHMSA's previous interstate determination are moot.

Petitioners challenge the basis for PHMSA's assertion of authority over the Santa Ynez pipeline system. PHMSA's new jurisdictional determination, which is based in part on new factual materials and explains PHMSA's rationale, supersedes its prior determination. Petitioners' challenges to PHMSA's prior determination are therefore moot. Contrary to California's suggestions otherwise, Cal. Opp. 7-8, assuming any challenge to the new jurisdictional determination is filed within 89 days of the jurisdictional order's issuance on June 25, 2026, the United States would not make a statute of limitations argument. The new jurisdictional order is a judicially reviewable, final agency action.

California argues that PHMSA's new jurisdictional determination does not supersede its December 17, 2025, letter asserting jurisdiction over the Santa Ynez pipeline system, wrongly claiming that "the Jurisdictional determination on its face does no such thing." Cal. Opp. 7, 10. But the new jurisdictional determination contains *express* language about superseding the prior determination: "[t]his jurisdictional determination confirms *and supersedes* the jurisdictional determination issued on December 17, 2025." Ex. 2:2. PHMSA issued a new interstate jurisdictional determination supported by new reasoning. Ex.2.

And contrary to Petitioners' arguments otherwise, the new jurisdictional determination relies on new record evidence. *E.g.* Cal. Opp. 10, Envtl. Opp. 18. For example, in the new determination, PHMSA relied on a purchase agreement for selling product at the Pentland terminal, new diagrams of the Las Flores Canyon facility and Pentland terminal, and manuals discussing the processes at the Las Flores Canyon facility and Pentland terminal.

California incorrectly argues that the cases cited in support of the United States' motion are not analogous to the situation presented by PHMSA's new actions. Cal. Opp. 8. This Circuit's precedents hold that superseding actions moot challenges to prior actions. In *Native Vill. of Point Hope v. Salazar*, 680 F.3d 1123, 1130-1131 (9th Cir. 2012), a new oil exploration plan succeeded on old plan, mooting a challenge. In *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, 691

7

F.3d 1008, 1017 (9th Cir. 2012), a new biological opinion succeeded an old one, mooting a challenge. Similarly, here, PHMSA has issued a new jurisdictional decision based on updated reasoning and additional record materials.

Moreover, the new decision addresses California's challenges here. California argues the original federalization order is arbitrary and capricious because it is conclusory and that PHMSA's brief relies on *post hoc* rationalization. *See* Dkt. 93.1 21 fn.14, 25. The new jurisdictional determination obviates California's arguments regarding conclusory, *post hoc* reasoning. Neither PHMSA's original jurisdictional determination nor the reasoning therein are the basis for PHMSA's assertion of jurisdiction now. PHMSA has a new jurisdictional determination supported by new reasoning and a new record.

California's reliance on *350 Montana v. Haaland*, 50 F.4th 1254 (9th Cir. 2022) and *National Audubon Society v. Butler*, 160 F. Supp. 2d 1180 (W.D. Wash. 2001) is misplaced. Cal. Opp. 6, 8, 9. In those cases, an agency either explicitly relied on reasoning set out in a prior challenged action or expressly incorporated relevant portions of a prior challenged action into a subsequent decision—neither of which occurred here. *See 350 Montana*, 50 F.4th at 1264 ("Significant for purposes of this appeal, the 2020 EA [environmental assessment] incorporated in full the 2018 EA's analysis. ... The 2018 EA ... has neither disappeared nor been replaced."); *National Audubon Society*, 160 F. Supp. 2d at 1187 (A new EA that

8

"explicitly relies on the reasoning" did not moot challenges to that prior EA.).

Here, PHMSA's conclusion is supported by new facts, new reasoning, and a new

record. *See WildEarth Guardians v. Haaland*, Nos. 22-15029, 22-15091, 2023 WL

8613628 (9th Cir. Dec. 13, 2023) (distinguishing *350 Montana* where a subsequent

action "altered aspects" of the original challenged action).  Unlike the facts in *350

Montana* and *National Audubon Society*, PHMSA did not incorporate its prior

reasoning by reference, and did not otherwise rely on its prior conclusion.  *See*

Ex.2.  Those cases do not apply here.

### III.    Challenges to the Restart Plan are moot.

The challenge to the restart plan approval has a separate jurisdictional

defect.  The restart plan was issued under the 2020 consent decree and was not "an

order issued under this chapter"—Chapter 601 of the Pipeline Safety Act.  49

U.S.C. § 60119(a)(1); *see* U.S. Br. at 57-58.  There is no Pipeline Safety Act restart

plan requirement.  The only reason Sable had a restart plan, and the only reason

PHMSA approved it, is because of the consent decree.  Because of that, challenges

to the restart plan are properly heard in district court, which retains jurisdiction

over enforcement of that decree.  2-ER-272.[2]  California's lead challenge

---

[2] It makes no difference that the consent decree incorporated a PHMSA corrective
action order that required the restart plan.  Envtl. Reply at 32, Dkt. 122.1.  Once
incorporated into the consent decree, that order became part of the decree and
subject to its dispute resolution procedures.  The approval of the restart plan is thus

underscores this point: they contend that the restart approval violates the consent decree because it vests approval authority with the California Fire Marshall. But a claim that a party violated a consent decree must be brought before the district court that entered the consent decree. *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 524 fn. 13 (1986) (recognizing an advantage of settlement by consent decree is channeling enforcement to a single forum—the court that entered the decree—thus avoiding the waste of judicial resources and inconsistent rulings).

Separately, the challenge to the restart plan approval is moot. The pipeline has already restarted. Vacating restart plan approval would not *unstart* the pipeline. Nothing in the restart plan or the consent decree provides that the pipeline must be shut down if a court—particularly a court other than the court that entered the consent decree—disapproves of PHMSA's restart plan approval.

Next, PHMSA has now undertaken NEPA analysis for the restart plan, mooting Petitioners' NEPA challenge. U.S. MTD at 11-14. That new analysis consists of an EA and a finding of no significant impact. U.S. MTD 11-12. PHMSA completed a NEPA EA on February 20, 2026, that assessed impacts associated with both the emergency special permit and the proposed non-emergency special permit. Ex. 3. PHMSA relied on the analysis contained in that

---

an action pursuant to the consent decree, not an "order issued under [the PSA]." 49 U.S.C. § 60119.

EA to support its conclusion that the restart plan would have no significant environmental impact.  Ex. 4:11.

Environmental Petitioners make the circular argument that their jurisdictional challenge to the restart plan is not moot because their restart plan challenge, if resolved in their favor, would have preclusive effects.  Envtl. Opp. 8. While the United States does not concede that there would be any preclusive effect from any ruling on the restart plan in this Court, even if such an effect might occur, it would not save this challenge from mootness.  This Court has recognized that "[i]t is circular to argue that a case is live because resolving it may produce a preclusive effect, because it may produce such a preclusive effect only if it is live." *Tur v. YouTube,* 562 F.3d. 1212, 1214 (9th Cir. 2009).  Thus, preclusive effect in other litigation is insufficient to avoid mootness, and instead "an issue is moot when deciding it would have no effect within the confines of the case itself." *Id.*

California incorrectly claims that the United States argued in district court that the restart plan can only be challenged by direct review in this Court.  Cal. Opp. 15.  Instead, the United States argued that California cannot collaterally attack PHMSA's assertion of jurisdiction in district court because the Pipeline Safety Act grants review of such claims exclusively to the courts of appeal.  *United States v. Plains All-American Pipeline, 2:20-cv-02415*, Dkt. 60 at 24.  Whether those challenges are framed around the restart plan, the original interstate

determination letter, or any other federal action, they are properly filed in the courts of appeal.  49 U.S. Code § 60119.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal as moot. Alternatively, the Court could hold this case until any challenges to the new permit and new jurisdictional determination are filed and then address the mootness of the initial challenges at the same time that the Court assesses challenges to PHMSA's new actions.  At minimum, the Court should call for supplemental briefing on *Flowers Foods* and interstate commerce.

Respectfully submitted,

/s/ *Matthew R. Oakes*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

Of Counsel:

ROBERT N. STANDER
*Deputy Assistant Attorney General*

GREGORY ZERZAN
*General Counsel*
U.S. Dept. of Transportation

REBECCA JAFFE
MATTHEW R. OAKES
*Attorneys*
Environment and Natural Resources Division

KEITH COYLE
*Chief Counsel*
BENJAMIN FRED
*Assistant Chief Counsel*
TIMOTHY O'SHEA
KATHLEEN MAITLAND
*Attorneys*
Pipeline and Hazardous Materials Safety
Administration

U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
matthew.oakes@usdoj.gov

July 9, 2026
DJ# 90-13-1-18706

13

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27-1(1)(d) because, excluding the parts of the document exempted by Rules 27(a)(2)(B) and 32(f), this document contains 2,589 words. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

s/ *Matthew R. Oakes*
MATTHEW R. OAKES

Counsel for Appellants

14

1a