Nos. 25-8059, 26-508, 26-4629

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENVIRONMENTAL DEFENSE CENTER, et al.,
*Petitioners*,

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents*,

and

SABLE OFFSHORE CORP., et al.,
*Intervenors*.

On Petition for Review of Actions Taken by the
Pipeline & Hazardous Materials Safety Administration

# PETITIONERS' STATEMENTS OF POSITION PURSUANT TO AUGUST 11, 2026 ORDER

Linda Krop
Jeremy M. Frankel
Margaret M. Hall

Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
Tel: (805) 963-1622
lkrop@environmentaldefensecenter.org
jfrankel@environmentaldefensecenter.org
mhall@environmentaldefensecenter.org

*Attorneys for Petitioners Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

Julie Teel Simmonds
David Pettit
Talia Nimmer

Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
Tel: (510) 844-7100
jteelsimmonds@biologicaldiversity.org
dpettit@biologicaldiversity.org
tnimmer@biologicaldiversity.org

*Attorneys for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

Pursuant to the Court's August 11, 2026, Order, Petitioners Environmental Defense Center et al. (the "NGO Petitioners") provide the following statements of position:

1. The NGO Petitioners cannot opine on whether the State's new petition will require additional briefing. However, should the NGO Petitioners file a new petition of their own, there would be no need for additional briefing on the jurisdictional issue, as the issue has already been fully briefed under the existing petitions. But any non-jurisdictional claims that NGO Petitioners raise—e.g., that the Special Permit was issued in violation of the Pipeline Safety Act (PSA), National Environmental Policy Act (NEPA), or Endangered Species Act (ESA)—would require additional briefing.

2. Federal Respondents cannot contrive, in the context of the new petition, any new facts or record materials that would materially affect the Court's analysis of the jurisdictional issue. The jurisdictional issue turns on the function and purpose of the LFC Facilities, and the Court already has before it a comprehensive and uncontroverted overview of those facilities.

3. In the event the Court resolves the jurisdictional issue in Petitioners' favor, it would *not* be necessary for the Court to resolve any non-jurisdictional challenges in either the existing petitions or any new petition.

## I. Is additional briefing necessary on the merits of the new petition, particularly as to issues other than the agency's exclusive jurisdiction?

Because the NGO Petitioners are not privy to what claims the State intends to raise in its new petition, the NGO Petitioners do not have a fully formed opinion on this issue.

However, the NGO Petitioners note that they may likewise file a new petition challenging the Special Permit.[1] If so, their new petition would likely include (1) a claim again challenging PHMSA's assertion of jurisdiction over pipelines CA-324 and CA-325, and (2) new claims specific to the Special Permit, e.g., that PHMSA violated the PSA, NEPA, and ESA.

The first potential claim—addressing the jurisdictional issue—has already been fully briefed under the existing petitions (in cases 25-8059 and 26-508) and would require no additional briefing. The NGO Petitioners maintain that the Court can and should resolve the jurisdictional issue under the existing petitions, and the Court need not wait for a new petition from the NGO Petitioners to do so. Should the Court rule in Petitioners' favor, any new petition from the NGO Petitioners can be summarily resolved, as the ruling would be dispositive of the petition.

The second set of potential claims—specific to the new Special Permit—

[1] On July 23, 2026, Petitioners served on PHMSA a 60-Day Notice of Intent to sue for violating the Endangered Species Act in issuing the Special Permit. Thus, the soonest Petitioners would file a new petition is September 21, 2026.

would require additional briefing. However, the Court need only reach these claims if it resolves the jurisdictional issue in favor of Federal Respondents.

## II. <u>Are there new facts or record materials which underlie the agency's June 25, 2026, jurisdictional determination or that are otherwise necessary to the court's review of the new petition?</u>

There are no new facts underlying PHMSA's new jurisdictional determination, and any new record materials that the agency contrives will not materially affect the Court's analysis of the jurisdictional issue.

In its new jurisdictional determination, PHMSA claims the Onshore Pipelines are *inter*state under two distinct theories: (1) a single "pipeline facility" theory, which was fully briefed by all parties in their principal briefs, and (2) an "interstate commerce" theory, which was fully briefed by all parties in supplemental briefing ordered by the Court. As previously explained, both these theories turn, essentially, on the function and purpose of the LFC Facilities. *See, e.g.,* NGO Supp. Br. at 18. And, between Federal Respondents' supplementations to the record and the documents this Court has now judicially noticed, *see* Dkt. Nos. 96 and 109, the Court already has before it a comprehensive and uncontroverted overview of how these facilities function. *See, e.g.,* 2-PHMSA-SER-146–65 (Sable-submitted slide deck with explanations of facilities); 2-PSE-268–272 (excerpt of air pollution permit with detailed explanation of equipment at the LFC Facilities, their purpose, and how they function); 2-PSE-361–381 (excerpt

of development and production plan providing the same); 1-CalPSE-82–152 (Sable's SPCC Plan for the LFC Facilities providing the same).

The LFC Facilities have not changed between PHMSA's first and second jurisdictional determinations—they have performed the same function for forty years. Thus, as counsel for Federal Respondents conceded at oral argument, the relevant "facts on the ground" have not changed. And indeed, PHMSA's new jurisdictional determination does not provide any new facts about the LFC Facilities that are not already before the Court. *See* Mtn. to Dismiss, Ex. 5, at 6–7.

Nor, similarly, can Federal Respondents contrive any new record materials that would materially affect the Court's analysis. Federal Respondents have not yet certified the record for the new petition, but they previously stated that the new record would include "a purchase agreement for selling product at the Pentland terminal, new diagrams of the Las Flores Canyon facility and Pentland terminal, and manuals discussing the processes at the Las Flores Canyon facility and Pentland terminal." PHMSA Reply ISO Mtn. to Dismiss at 7. But again, the LFC Facilities and their function have not changed, and the Court already has before it a comprehensive overview of them. Thus, none of these documents will affect the resolution of this matter one way or the other.

## III. **Would it be necessary for the Court to resolve any non-jurisdictional challenges in the event that it rules for petitioners on the issue of the agency's exclusive jurisdiction under the Pipeline Safety Act?**

No. All agency actions at issue would necessarily be vacated, without remand, as *ultra vires*. Thus, the Court would not need to reach any additional non-jurisdictional challenges under either the existing petitions or any new petition challenging the Special Permit.

Dated: August 21, 2026

Respectfully submitted,

*s/ Jeremy Frankel*
Linda Krop
Margaret M. Hall
Jeremy M. Frankel
ENVIRONMENTAL DEFENSE CENTER
*Counsel for Petitioners Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

*s/ Julie Teel Simmonds*
Talia Nimmer
Julie Teel Simmonds
David Pettit
CENTER FOR BIOLOGICAL DIVERSITY
*Counsel for Petitioners Center for Biological Diversity and Wishtoyo Foundation*

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** 25-8059, 26-508, 26-4629

I am the attorney or self-represented party.

**This brief contains 982 words,** including **0 words** manually counted in any visual images, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[**X**] complies with the length limit designated by court order dated August 11, 2026.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** s/ *Jeremy Frankel* **Date:** August 21, 2026